**UNITED STATES of America**

v.

**Harold JORDAN.**

**Crim. A. No. 89–00501.**

United States District Court, E.D. Pennsylvania.

April 26, 1990.

Maureen Barden, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Claire J. Rauscher, Asst. Defender, Defender Ass'n of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM

KATZ, District Judge.

Defendant pleaded guilty to one count of wire fraud and one count of mail fraud. The offense conduct, which commenced in February of 1987, involved a scheme to defraud South African nationals through false representations that the defendant was able to obtain special assistance from Senator Heinz in obtaining permanent residency status in the United States. Defendant defrauded five victims of a total of $2,750.

Defendant raises two objections to the presentence report. First, defendant argues that his criminal history score is incor-

rectly calculated. Defendant also objects to the two-point upward adjustment because his victims were unusually vulnerable under section 3A1.1 of the Sentencing Guidelines.

The criminal history score as calculated in the presentence report is 3. That score is based on one prior sentence for prison breach imposed on December 12, 1968. At that time, defendant was serving a sentence for violation of parole, so imprisonment on the prison breach sentence did not begin until April 13, 1971. On August 4, 1971, defendant was released from state prison and served the balance of the sentence for prison breach at a community treatment center on work release status. The sentence for prison breach officially expired on March 13, 1973.

■ Under the Guidelines, a prior sentence of imprisonment exceeding one year and one month is counted toward a defendant's criminal history score if it was either imposed within fifteen years of the commencement of the instant criminal conduct or if the prior sentence, regardless of the date of imposition, resulted in the defendant being incarcerated during the same fifteen-year period. U.S.S.G. § 4A1.2(e)(1). The prior sentence in this case was imposed more than fifteen years before the commencement of the instant offense. Thus, if the prior sentence is to be counted at all, it is because defendant was incarcerated during the period as a result of it. The narrow question, then, is whether residence at a community treatment center qualifies as "incarceration" because that is the only form of custody to which defendant was subjected during the fifteen-year period.

There is no definition of "incarceration" in the Guidelines. Section 4A1.2(b)(1) defines "sentence of imprisonment" as a sentence of incarceration, but that does not shed any direct light on the work release question. What is illuminating, however, is the way in which Chapter Five of the Guidelines, "Determining The Sentence," treats community confinement as an alternative to a sentence of imprisonment in certain situations. Sections 5C1.1(d) and 5C1.1(e) set forth the situations in which a

defendant may be eligible for a sentence other than imprisonment. As these provisions make clear, community confinement is a substitute for imprisonment for offenders with relatively low guideline ranges. Given this usage, as well as the equivalent meanings of "imprisonment" and "incarceration" indicated by section 4A1.2(b)(1), I am satisfied that the term "incarceration" in section 4A1.2(e)(1) refers to imprisonment in a jail or similar correctional facility and does not include residence in a community treatment center. This conclusion is in keeping with the general principle that penal statutes are to be construed strictly so that no one is subject to a penalty unless the statute plainly imposes it. *E.g., United States v. Campos–Serrano,* 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971). Thus, defendant's sentence for prison breach imposed on December 12, 1968 does not count toward his criminal history score. Defendant's correct criminal history score is therefore zero (0), which places him in criminal history category I.

■ Defendant's objection to the two-point enhancement under the vulnerable victim provision is also well-founded. Section 3A1.1 provides:

> If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

In *United States v. Moree,* 897 F.2d 1329 (5th Cir.1990), defendant offered to "fix" a criminal indictment pending against the victim in return for a $160,000 fee and was convicted of obstruction of justice. As in this case, the defendant in *Moree* promised special consideration due to his relationship with public officials. The court found that:

> [a] condition that occurs as a necessary prerequisite to the commission of a crime cannot constitute an enhancing factor under § 3A1.1. The vulnerability that triggers § 3A1.1 must be an "unusual" vulnerability which is present in only some victims of that type of crime. Otherwise, the defendant's choice of a likely victim does not show the extra measure of criminal depravity which § 3A1.1 intends to

more severely punish.... Here, Moree's activities focused on [the victim] because he had previously been indicted, not because of any perceived mental or physical vulnerability. [The victim] surely was put on the defensive by his indictment, but he did not suffer from any unusual physical or mental problems....

*Id.* at 1335–36.

Similarly, the status of the victims in this case, while a necessary prerequisite to the crime, did not make them particularly susceptible to fraud. The victims here were highly educated South African nationals. Defendant's conduct, albeit criminal in nature, did not rise to the level of depravity contemplated by section 3A1.1. The fact that the victims were South Africans seeking permanent residence merely made the fraud possible, it did not make them unusually vulnerable. *Id.; United States v. Creech*, 901 F.2d 861 (10th Cir.1990) (youth of victims where defendant singled out newlyweds for murder and torture threats does not provide basis for application of § 3A1.1); *see also United States v. Velasquez–Mercado*, 872 F.2d 632 (5th Cir.1989) (discussing meaning of "victim" under § 3A1.1). Thus, section 3A1.1 does not apply to the facts of this case.