UNITED STATES of America, Plaintiff–Appellee,

v.

Edwin VANDERLAAN, Defendant–Appellant.

No. 90–2008.

United States Court of Appeals, Tenth Circuit.

Dec. 4, 1990.

Stephen P. McCue, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

David N. Williams, Asst. U.S. Atty. (Robert J. Gorence, Asst. U.S. Atty. and William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN and EBEL, Circuit Judges, and BROWN,* District Judge.

WESLEY E. BROWN, Senior District Judge.

The defendant Edward Vanderlaan appeals the sentence imposed upon him following his plea of guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) and (d). The district court found Mr. Vanderlaan to be a career offender under § 4B1.1 of the U.S. Sentencing Guidelines ("U.S.S.G.") and sentenced him to a term of imprisonment of 210 months. The defendant contends that he was erroneously classified as a career offender because he did not have two predicate felony offenses that count toward career offender status under the guidelines.

The question we address is whether a 1973 plea of guilty by the defendant to possession with intent to distribute heroin (21 U.S.C. § 841(a)(1)) counts as a valid predicate offense for career offender liability. The defendant contends that the 1973 conviction is barred from consideration because it is too remote in time. The facts are undisputed and the issue presented involves an interpretation of the guidelines, which we review de novo. *United States v. Davis*, 912 F.2d 1210, 1211 (10th Cir. 1990). The defendant concedes that if his 1973 conviction is a valid predicate offense,

his other contentions are moot. (Appellant's Brief at 11). Because we find that the 1973 conviction was properly counted, we affirm the sentence imposed by the district court.

One of the requirements for career offender liability is that the defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. There is no dispute that the defendant had a 1977 armed robbery conviction that counts as one predicate offense. Furthermore, the defendant acknowledges that his 1973 heroin conviction is a controlled substance offense. He argues that the 1973 conviction should be barred from consideration, however, because it is untimely. This argument is based on U.S.S.G. § 4A1.2(e), which places certain time restrictions on the use of prior offenses in calculating a defendant's criminal history.[1] The time restriction applicable to a particular offense depends in part upon the sentence imposed for the prior offense:

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. *Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen year period.*

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

U.S.S.G. § 4A1.2(e) (emphasis added).

The defendant contends that his 1973 conviction did not result in a "sentence of imprisonment" because he was sentenced under a special act designed to provide

---

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

1. The time restrictions on prior offenses are applicable to the counting of convictions under

the career offender provision. *See* U.S.S.G. § 4B1.2 *Commentary Note 4; United States v. Gardner,* 905 F.2d 1432, 1439 (10th Cir.1990).

drug treatment. On January 5, 1973, the defendant pled guilty in the U.S. District Court for the District of New Mexico to a charge of possession with intent to distribute heroin. On June 30, 1973, the defendant was sentenced under the provisions of Title II of the Narcotic Addict Rehabilitation Act ("NARA"), 18 U.S.C. §§ 4251–55 (repealed Nov. 1, 1986). Under Title II of NARA, certain convicted offenders who were found to be drug addicts could be committed to the custody of the Attorney General for treatment. The offender was sentenced for an indeterminate period not to exceed ten years. Following completion of a drug rehabilitation program and certification by the proper authorities, the offender could be paroled at the discretion of the Parole Commission. *See former* 18 U.S.C. § 4254.

Consistent with the provisions of Title II of NARA, in 1973 the defendant was "committed to the custody of the Attorney General or his authorized representative for treatment for an indeterminate period of time not to exceed TEN (10) YEARS." He was paroled from the Federal Correctional Institution in Fort Worth, Texas, on September 20, 1974. On October 29, 1974, a federal parole violation warrant was issued for the defendant, alleging a continued use of controlled substances. He was arrested on November 13, 1974, and was returned to federal custody on January 8, 1976, after completing a state criminal sentence.

The defendant argues that his sentence under NARA for treatment was fundamentally different from a sentence of imprisonment. He argues that the commitment of an individual for treatment is similar to a diversionary disposition and should be treated as such. He maintains that the purpose of NARA was to provide treatment and rehabilitation for addicted offenders, not to punish them. The defendant therefore contends that his 1973 conviction did not give rise to a "sentence of imprisonment" within the fifteen year time period provided for in § 4A1.2(e)(1) and is not a timely predicate offense for career offender liability.

We find that the defendant's sentence under Title II of NARA in 1973 was a "sentence of imprisonment" as that phrase is used in the guidelines. Section 4A1.2(b) of the guidelines defines a sentence of imprisonment as a "sentence of incarceration." This suggests that physical confinement is a key distinction between sentences of imprisonment and other types of sentences.[2] The guidelines make no distinction between offenders incarcerated primarily for rehabilitation and those incarcerated simply to remove the offender from society. Although not spelled out in any further detail, a "sentence of incarceration" may be contrasted with other types of criminal sentences identified in the guidelines—such as probation, fines, and supervised release. *See e.g.,* U.S.S.G. § 4A1.1(d). These types of sentences do not require that an offender be continuously confined in a federal institution. In contrast, an offender under Title II of NARA was sentenced to the custody of the Attorney General for "treatment"—which normally meant confinement in a special treatment facility but could include confinement in any institution within the federal penal system. *See* 18 U.S.C. § 4251(c) and *1966 U.S. Code Cong. & Adm. News,* p. 4247. An offender sentenced to the custody of the Attorney General was not eligible for conditional release unless such a release was approved by the Parole Commission. 18 U.S.C. § 4254. Like an offender under any other sentence of imprisonment, the offender sentenced under Title II of NARA remained in a federal institution and was deprived of his liberty until such time as the Parole Commission determined that he was a suitable candidate for parole. It cannot be said that because an offender sentenced to the custody of the Attorney General was placed in an institution primarily designed to provide treatment facilities, that the offender was therefore not

---

**2.** Webster's Third International Dictionary defines "incarceration" as "a confining or state of being confined: imprisonment. . . ."

incarcerated.[3] Moreover, NARA was not drafted solely to provide treatment for the offender; it was drafted so as to serve the dual purposes of rehabilitating addicts and protecting the public. *Lewis v. United States Parole Commission*, 448 F.Supp. 1327 (E.D.Mich.1978) (The Act clearly has a punitive as well as a treatment aspect.) The public was protected by ensuring that the offender remained in custody in a correctional facility until he was ready for parole. *See King v. Norton*, 336 F.Supp. 255, 257 (D.Conn.1972) ("Petitioner contends that his sentence under [NARA] limits his confinement to federal institutions with rehabilitation facilities for narcotic addicts, which are absent at Lewisburg. However, the legislative history of § 4253 of the Act makes clear that where the prisoner does not respond successfully to the rehabilitation program, ordinary incarceration is contemplated. Section 4253 '... provides a lengthy period of sentence for those recalcitrant offenders who do not respond to treatment.'") *Cf. United States v. Williams*, 891 F.2d 212, 216 (9th Cir.1989) (Juvenile sentence of confinement is considered "imprisonment" for purposes of U.S.S.G. § 4A1.1(b)). *See also United States v. Hanley*, 906 F.2d 1116, 1120 (6th Cir.1990).

We cannot agree with the defendant's argument that his sentence under NARA was similar to a diversionary disposition. Title I of NARA allowed defendants to voluntarily commit themselves to the custody of the Surgeon General in order to avoid prosecution. *See* 28 U.S.C. §§ 2901–06. The defendant in this case was not voluntarily committed under the provisions of Title I, however; he was sentenced to the custody of the Attorney General under Title II as a result of a criminal conviction.

The sentence imposed upon the defendant constituted a sentence of imprisonment and resulted in his incarceration within fifteen years of the commission of the instant offense.[4] The 1973 conviction was therefore properly counted as part of the defendant's criminal history and the defendant was properly classified as a career offender.

AFFIRMED.

---

**3.** *Cf.* Example D.5 of the Supplementary Illustrations on Criminal History at p. 5 (U.S. Sentencing Commission Guidelines Manual—Dec. 1987). The example states that a sentence of probation imposed upon an offender on the condition that he reside in a halfway house would be treated as a non-imprisonment sentence. But where an offender is sentenced to imprisonment with a recommendation for halfway house placement, the sentence would be treated as a sentence of imprisonment. *See also United States v. Jordan*, 734 F.Supp. 687 (E.D.Pa.

1990) ("Incarceration" refers to imprisonment in a jail or similar correctional facility; it does not include residence in a community treatment center.)

**4.** The fifteen year period began with the commission of the instant offense—July 12, 1989—and extended back fifteen years to July 12, 1974. The record clearly shows that the defendant was incarcerated for the 1973 conviction subsequent to July 12, 1974. (Presentence Report at 6).