**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Miguel Martin TAPIA, Defendant–**
**Appellant.**

**No. 92–6171**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 22, 1993.

Jimmy B. Pool, Montgomery, AL, for defendant-appellant.

Louis V. Franklin, Sr., Asst. U.S. Atty., Montgomery, AL, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

On July 2, 1991, defendant-appellant Miguel Martin Tapia pleaded guilty to one count of escaping from federal custody in violation of 18 U.S.C. § 751(a). On February 26, 1992, the district court, applying the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G."), calculated a Guideline offense level of 11 and sentenced appellant to a term of twenty-four months imprisonment, to be served consecutively to his uncompleted previous federal sentence, and to be followed by a three year term of supervised release. *See* Judgment and Commitment Order. On appeal, appellant challenges that sentence on four separate grounds. As none of these claims has merit, we affirm the sentence imposed by the district court.

## I. APPLICATION OF THE SENTENCING GUIDELINES TO PRE–GUIDELINES ESCAPE

■ Defendant escaped from federal custody on or about July 11, 1986. He was arrested and charged with escape on April 30, 1991. Under the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987 (codified at 18 U.S.C. §§ 3551–3586, 3601–3624, 3661–3673; 28 U.S.C. §§ 991–998 (1988 & Supp. I 1989)), offenses occurring after November 1, 1987, are governed by the U.S. Sentencing Guidelines. The district court sentenced appellant pursuant to the Guidelines. Appellant argues that because his escape took place before November 1987 when the U.S. Sentencing Commission promulgated the *Guidelines Manual* establishing sentencing ranges for the crime of escape, the district court's sentencing him under the Guidelines amounted to application of an ex post facto law in violation of the Constitution. *See* U.S. Const. Art. I, § 9, cl. 3.

[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

*Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (footnote omitted). Appellant's claim undeniably satisfies the second of these requirements since the punishment meted out to escapees under the Guidelines is in several respects more severe than that usually imposed under the pre-Guidelines sentencing regime. For example, the Guidelines require that sentences for escape be served consecutively to, not concurrently with, any uncompleted previous sentence. *See* U.S.S.G. § 5G1.3. However, because of the nature of the crime of escape, appellant's claim does not satisfy the first of the two *Weaver* requirements and therefore does not establish a violation of the Ex Post Facto Clause.

The Supreme Court has held that the crime of "escape from federal custody as defined in 18 U.S.C. § 751(a) is a continuing offense and ... an escapee can be held liable for failure to return to custody as well as for his initial departure." *United States v. Bailey,* 444 U.S. 394, 413, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980). Though appellant escaped from federal custody more than fifteen months before the Guidelines were issued, he remained at large for an additional three and one-half years following the date that they took effect. As such, the violation of § 751(a) to which he pleaded guilty was based in part on his failure to return to federal custody during the period between November 1, 1987, and April 30, 1991. This behavior post-dated the promulgation of the Guidelines and may therefore properly be punished under them. On these facts, the district court's sentencing appellant under the Guidelines did not constitute application of an ex post facto law. In sustaining the constitutionality of applying the Guidelines to such an escape, we are in agreement with the Third Circuit which reached the same conclusion in a case presenting identical facts. *See United States v. Audinot,* 901 F.2d 1201 (3rd Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 179, 112 L.Ed.2d 142 (1990).

■■■ Citing *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), appellant contends that the Ex Post Facto Clause bars the government from applying a new law to an individual until such time as that person has been "warned" of the change in the law. Appellant's Brief at 14–15. Appellant argues that because he does not speak or read English, he was never adequately warned of the changes in the way escape is treated under the Guidelines and that, therefore, it was improper to apply them to him. Appellant misconstrues *Miller.* That case simply restated the well-established principle that a new law may only be applied to conduct occurring after the date of its enactment. *Miller* recognized no special duty on the part of the government to "warn" citizens upon the enactment of new penal laws. Rather, the case addressed the topic of "warning" only by way of rejecting the government's contention that penal laws might permissibly be applied to pre-enactment conduct so long as the public had been "warned" that the law might be subject to revision. *Id.* at 431, 107 S.Ct. at 2451–52.

[4] Courts have never construed the Ex Post Facto Clause as requiring the government to take special steps to apprise the public of the existence of newly enacted penal laws. Rather, "[t]he principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation." *United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 563, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971). Under unusual circumstances such as where the law criminalizes behavior that the average person would not presume to be prohibited, the Constitution's due process requirement may bar imposition of criminal liability on a defendant who was unaware of the law's existence. *See Lambert v. California,* 355 U.S. 225, 229, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957). That, however, is not this case. Thus, there is no merit to appellant's claim that the Guidelines may not properly be applied to him

because he was not "warned" of their promulgation.

## II. REFUSAL TO GRANT OFFENSE LEVEL REDUCTION

Appellant argues that under U.S.S.G. § 2P1.1(b)(3) he was entitled to a four level reduction in the offense level calculated for him. § 2P1.1(b)(3) instructs:

> If the defendant escaped from the non-secure custody of a community corrections center, community treatment center, "halfway house," or similar facility, and [the provision concerning escapees who voluntarily return within 96 hours] is not applicable, decrease the offense level [by 4 levels if the defendant was in custody as the result of a conviction or an arrest on a charge of felony] or [otherwise decrease] the offense level ... by 2 levels. *Provided*, however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.

At the time of his escape, appellant was imprisoned at Maxwell Federal Prison Camp, Maxwell Air Force Base, Alabama. He effected his escape by walking away from his post on an unguarded grounds maintenance detail located in a section of the base outside of the security perimeter of the prison camp.

■ As the government concedes, the work detail constituted non-secure custody for the purposes of § 2P1.1(b)(3). *See* U.S.S.G. § 2P1.1, comment. (n. 1) (citing "walk[ing] away from a work detail outside the security perimeter of an institution" as an example of non-secure custody). However, the government argues that in order to qualify for an offense level reduction under § 2P1.1(b)(3), not only must the defendant have escaped from non-secure custody, but the escape must have been from custody in a designated category of detention facility: "a community corrections center, community treatment center, 'halfway house,' or similar facility." § 2P1.1(b)(3). We agree with this construction of § 2P1.1(b)(3). As Chief Judge Thompson

of the Middle District of Alabama explained recently:

> When § 2P1.1(b)(3) is construed in the context of other, related provisions of the Guidelines, it is clear that the specific-institution language imposes an additional requirement which must be met before the provision may be applied. Section 2P1.1(b)(2), like § 2P1.1(b)(3), applies to escapes. Subsection (b)(2) provides for a sentence reduction "If the defendant escaped from *non-secure custody* and returned voluntarily within ninety-six hours" (emphasis added). However, unlike subsection (b)(3), subsection (b)(2) does not require that the defendant have resided in any particular type of facility. Subsection (b)(2) therefore applies to non-secure custody in general, whereas subsection (b)(3) applies to non-secure custody in specific institutions only. It would be illogical to read the two subsections as if they contained the same language when they do not.
>
> * * *
>
> In conclusion, to receive the four-point reduction under § 2P1.1(b)(3), a defendant must demonstrate that, first, he was in "non-secure custody," *and*, second, he escaped from a community corrections center, community treatment center, "halfway house," or a facility which is similar to these three.

*United States v. Kahn*, 789 F.Supp. 373, 375–76 (M.D.Ala.1992) (footnote omitted) (emphasis in original). We concur in this analysis, noting that the Ninth and Tenth Circuits have also endorsed this construction of § 2P1.1(b)(3). *See United States v. Brownlee*, 970 F.2d 764 (10th Cir.1992); *United States v. McGann*, 960 F.2d 846 (9th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 276, 121 L.Ed.2d 204 (1992).

■ Thus, appellant would be eligible for an offense level reduction under § 2P1.1(b)(3) only if the prison camp from which he escaped qualified as a facility "similar" to "a community corrections center, community treatment center, [or] 'halfway house.'" We hold that it does not. Addressing precisely this question, Chief Judge Thompson's well-reasoned opinion continued:

[P]rison camps and community corrections centers are not sufficiently alike to be considered "similar" within the meaning of § 2p1.1(b)(3). First, because community corrections centers are "community based programs," *see, e.g.*, 28 C.F.R. §§ 524.41(d), 549.16(c) (1991), residence in such facilities is "community confinement," whereas federal prison camp incarceration is not. U.S.S.G. § 5F1.1, comment. (n. 1). Second, community-corrections-center confinement is used as intermediate punishment imposed as a condition of probation or supervised release, U.S.S.G. §§ 5C1.1(e)(2), 5F1.1, as punishment for offenders serving short sentences of imprisonment, or as a transitional service for those nearing release. U.S. Department of Justice, Federal Bureau of Prisons, *A Judicial Guide to the Bureau of Prisons* 6 (1991). Confinement in federal prison camps is institutional confinement, albeit under minimum security. *Id.* 8–9. Although some intermediate punishment programs are based in camps, assignment to a camp is not typically considered to be intermediate punishment. *Id.* Finally, the Prison Bureau's definition of "release" in some contexts includes an inmate's "transfer to a community corrections center." An inmate's transfer to a federal prison camp does not appear to be included in this definition. 28 C.F.R. §§ 301.102, 551.151 (1991).

*Kahn*, 789 F.Supp. at 377. In light of this analysis, we agree with the Ninth and Tenth Circuits that a federal prisoner who escapes from the non-secure custody of a federal prison camp is not entitled to an offense level reduction under U.S.S.G. § 2P1.1(b)(3). *See United States v. Brownlee*, 970 F.2d 764 (10th Cir.1992); *United States v. McGann*, 960 F.2d 846 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 276, 121 L.Ed.2d 204 (1992).

### III. OTHER CLAIMS

Appellant also argues that, in light of his poor medical condition, it was error for the district court to impose a consecutive rather than concurrent sentence on him for his escape and to refuse to grant a downward departure from the prescribed Guidelines sentencing range. These two claims are without merit and warrant no discussion.

### IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.