**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bruce Loren LATIMER, Defendant–Appellant.**

**No. 91–50420.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 1992.

Decided April 26, 1993.

---

Carlton F. Gunn, Asst. Federal Public Defender, Los Angeles, CA, for defendant-appellant.

John J. Byrne, Jr., Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: NORRIS, REINHARDT, and TROTT, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Appellant Bruce Latimer challenges his classification as a career offender under § 4B1.1 of the Sentencing Guidelines following his 1991 conviction for armed bank robbery and for use of a firearm during a crime of violence.[1] Because he was designated a career offender by the district court, Latimer was sentenced to a period of 26 years and 10 months in prison, followed by a 5-year term of supervised release. Of Latimer's nearly 27 years in prison, 15 of these years came solely as a result of his being classified as a career offender.

Whether Latimer is to be imprisoned an additional 15 years as a career offender turns, principally, on whether confinement in a community treatment center constitutes incarceration under the meaning of § 4A1.2(e)(1) of the Sentencing Guidelines. Because we hold that confinement in a community treatment center does not fall within the ambit of this provision, we reverse and remand for resentencing.

## I

A defendant qualifies as a career offender if the present offense is a crime of violence and if the defendant has two prior convictions for crimes of violence. U.S.S.G. § 4B1.1. A prior conviction may be counted only if the conviction resulted in the defendant's incarceration during any part of the 15 years prior to the commission of the present offense. *Id.* at § 4A1.2(e)(1).

Latimer does not dispute that his current offense, armed bank robbery, is a crime of violence. Nor does he dispute that he has one prior conviction which may be counted toward career offender status. Latimer's challenge is to the district court's decision to count several bank robberies he committed in 1967 as falling within the 15–year window.

The question now before us is whether Latimer's confinement in a community treatment center for three months in 1979, following the revocation of his parole on his 1967 convictions, constituted incarceration under the meaning of § 4A1.2(e)(1). If it did, then Latimer was properly classified as a career offender; if it did not, then he was sentenced to prison for 15 years longer than he deserves.

The government suggests two possible alternative grounds on which to base a finding that Latimer was incarcerated in connection with his 1979 parole revocation. First, the government argues that Latimer's three-month detention in the Utah Community Improvement Program, a community treatment center, following the revocation of his parole should be counted as incarceration under the Guidelines. In the alternative, the government notes that Latimer was detained for a period of time in a federal prison—first while he was awaiting his parole revocation hearing, and then while awaiting his subsequent transfer to the community treatment center—and argues that this detention should satisfy the meaning of incarceration under

---

**1.** Latimer raises a number of other challenges to both his conviction and his sentence. However, because his other claims do not present any novel questions of law, we decide them in an unpublished memorandum decision filed contemporaneously with this opinion.

§ 4A1.2(e)(1). We address each of the government's arguments in turn.

## II

Because Latimer challenges the application of the sentencing guidelines to undisputed facts, our review is de novo. *United States v. Wilson,* 900 F.2d 1350, 1355 (9th Cir.1990).

Section 4A1.2(e)(1) sets forth the time period within which a prior sentence must have been imposed or served to count towards a defendant's criminal history score. It provides that a district court may count a prior conviction only if the conviction resulted in the defendant's incarceration or imprisonment—the Commission uses the words interchangeably [2]—during any part of the fifteen years prior to the commission of the present offense:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1).

The Guidelines also state that, when a prison sentence is reinstated upon revocation of parole, the district court should "add the original term of *imprisonment* to any term of *imprisonment* imposed upon revocation." *Id.* at § 4A1.2(k)(1) (emphasis added). The two periods of imprisonment are counted as a single prison sentence for purposes of criminal history scoring, and for purposes of deciding whether that sentence falls within the applicable 15–year window. *Id.* at § 4A1.2(k)(2)(B). *See United States v. Harrington,* 923 F.2d 1371, 1375 (9th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991).

Thus, in cases where a defendant's prison sentence is reinstated after revocation of parole, the original sentence is counted only if "the date of last release from *incarceration* on [the post-revocation] sentence" falls within the 15–year period. U.S.S.G. § 4A1.2(k)(2)(B) (emphasis added).

If Latimer's detention in a community treatment center is properly characterized as incarceration, then the date of his "last release" from the community treatment center brings the 1967 convictions within the 15–year window, and thus brings Latimer within the definition of a career offender. The question of whether community treatment center detention constitutes "incarceration" under the meaning of section 4A1.2(e)(1) is one of first impression in our circuit.[3]

### A

Unfortunately, other than equating a "sentence of incarceration" with a "sentence of imprisonment," *see id.* at § 4A1.2(b)(1), the Guidelines do not define incarceration. Nor do they address whether detention in a community treatment center qualifies as incarceration. However, the Commission's silence on this question does not, and cannot, end the inquiry. In the absence of any clear expression of Commission intent, we must choose the interpretation that best fits the Guidelines' general structure and purposes.

At the outset of our inquiry, we find it significant that, in numerous provisions of the Guidelines, the Commission differentiates between imprisonment and non-imprisonment sentences (or, alternatively, between incarceration and ·non-incarceration sentences) based on the nature of the facility in which the confinement is served. In particular, the Commission repeatedly draws a sharp distinction between confinement in a community treatment center or

**2.** *See also* U.S.S.G. § 4A1.2(b)(1) ("The term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed.").

**3.** Thus far, only the Sixth Circuit has had occasion to address this question, and it reached the

opposite conclusion from the one we reach today. *See United States v. Rasco,* 963 F.2d 132 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992). *See* our discussion *infra* at 1515–16.

halfway house and confinement in a conventional prison facility.

For instance, in setting forth the formula for calculating a defendant's criminal history category, § 4A1.1 and its commentary add a different number of points to a defendant's criminal history score depending not only on the length of the prior confinement, but also on the *location* of the prior confinement.[4] Sentences of "imprisonment" are classified according to the amount of time the defendant spent in prison, and they are scored accordingly—3 points if the imprisonment exceeded 1 year and 1 month; 2 points if the imprisonment was for greater than 60 days but less than 1 year and 1 month; and 1 point if the imprisonment was for less than 60 days. *See* U.S.S.G. § 4A1.1(a)–(c), and comment (Background). In contrast with this three-tiered scoring structure for imprisonment sentences, a sentence served in a halfway house is in every case scored only 1 point—regardless of whether the defendant served 5 days or 5 years in confinement. *Id.* at § 4A1.1(c).

Although the Guidelines do not directly specify the number of points that are to be added for sentences to a community treatment center, the Commission indicates elsewhere in the Guidelines that it regards halfway houses and community treatment centers as roughly equivalent forms of punishment. *See* U.S.S.G. § 5F1.1, comment (n. 1) (" 'Community confinement' means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility."). Accordingly, in the absence of any indications to the contrary, we must assume that the Commission meant to classify confinement in a community treatment center under the same category as confinement in a halfway house, thus adding only 1 criminal history point for each prior term of confinement.

The Guidelines' scoring system—adding as many as 3 points for each sentence of imprisonment, but only 1 point for a sentence served in a community treatment center or halfway house—is fully consistent with the Guidelines' purposes. The point of the criminal history calculation is to quantify the defendant's relative culpability, by measuring both the extent and seriousness of the defendant's prior criminal record. The more serious a defendant's prior crimes, the higher his criminal history score, and the longer his ultimate sentence. *See* U.S.S.G. § 4A (Introductory Commentary) ("A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment."). Rather than trying to gauge the seriousness of each of the various crimes a defendant has committed, the Guidelines use a defendant's prior sentences as a rough proxy for the severity of his offenses.

The fact that the Guidelines add only 1 point for each sentence served in a community treatment center reflects the Commission's judgment that the crimes which result in community treatment center confinement are generally less serious (and thus say less about the defendant's relative blameworthiness) than crimes which result in imprisonment. Whether the Commission's judgment is sound or not is beside the point. What matters for our purposes is that, in scoring the two categories of punishment differently, the Commission

---

**4.** Section 4A1.1 directs the sentencing judge to add:

(a) Add 3 points for each *prior sentence of imprisonment* exceeding one year and one month.

(b) Add 2 points for each *prior sentence of imprisonment* of at least sixty days not counted in (a).

(c) Add 1 point for each *prior sentence* not counted in (a) or (b), up to a total of 4 points for this item.

U.S.S.G. § 4A1.1(a)–(c) (emphasis added).

The background commentary to section 4A1.1 equates "confinement sentences" with "sentences of imprisonment" and distinguishes both from residency in a halfway house:

Subdivisions (a), (b), and (c) of § 4A1.1 distinguish *confinement sentences* longer than one year and one month, shorter *confinement sentences* of at least sixty days, and *all other sentences,* such as confinement sentences of less than sixty days, probation, fines, and *residency in a halfway house.*

*Id.* at § 4A1.1, comment (Background) (emphasis added).

makes clear that it regards confinement in a community treatment center or halfway house as qualitatively different from confinement in a prison.

This distinction is reinforced by § 2P1.1, which describes the base offense levels that attach to various crimes of escape. If a defendant escaped while being held in confinement following an arrest for a felony charge, or following any conviction, the base offense level is set at 13. U.S.S.G. § 2P1.1(a)(1). If the escape occurred under any other circumstances (i.e., following a misdemeanor arrest), the base offense level is set at 8. *Id.* at § 2P1.1(a)(2). However, the base offense level can be reduced in cases where the defendant escaped from "a community corrections center, community treatment center, 'halfway house,' or similar facility." U.S.S.G. § 2P1.1(b)(3). Section 2P1.1(b)(3) states:

> (3) If the defendant escaped from the non-secure custody of a community corrections center, community treatment center, "halfway house," or similar facility, ... decrease the offense level under subsection (a)(1) by 4 levels or the offense level under subsection (a)(2) by 2 levels.

*Id.* at § 2P1.1(b)(3).

What is significant about this provision is that the offense level reduction applies exclusively to escapes from community confinement facilities, such as community treatment centers and halfway houses. Indeed, we have held along with our sister circuits that the reduction under § 2P1.1(b)(3) is unavailable to prisoners who have escaped from prisons or prison camps, even if they escaped under circumstances qualifying as "non-secure custody." *United States v. McGann,* 960 F.2d 846, 847 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 276, 121 L.Ed.2d 204 (1992) ("The language of subsection 2P1.1(b)(3) ... is limited to the non-secure custody of facilities like 'community corrections center[s], community treatment center[s], [and] "halfway house[s]." ' " The district court held that federal prison camps are generically different from the facilities listed in section 2P1.1(b)(3). Consequently, escapes from [prison] camps ... are not entitled to the sentencing reduction. We agree."); *see also United States v. Tapia,* 981 F.2d 1194 (11th Cir.1993); *United States v. Brownlee,* 970 F.2d 764, 765–66 (10th Cir.1992). That such a reduction is unavailable to defendants who escape from prison facilities is indicative of the Commission's view that escape from a prison is a more serious offense than escape from a community treatment center or halfway house.

Finally, the division between imprisonment and community treatment center confinement is emphasized again in § 5C1.1. For instance, § 5C1.1(d) provides that when a defendant's sentencing range is between 6 and 10 months, the court may impose either "(1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that *substitutes community confinement* or home detention according to the schedule in § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment." U.S.S.G. § 5C1.1(d) (emphasis added). In other words, if the court opts for the lower end of the range, 6 months, it cannot impose a sentence of 6 months in a community treatment center; it must impose at least 3 months of prison time. The apparent concern—indeed, the only conceivable reason for such a rule—is that it would be too lenient to permit a defendant to serve his entire term in a community treatment center. The obvious implication is that community treatment centers and prisons are not interchangeable.

This same distinction is apparent in § 5C1.1(e)(2), where the Guidelines set forth the ratio at which a court may substitute community confinement for imprisonment (subject, of course, to the limitations imposed by § 5C1.1(d)). This provision allows for the substitution of "[o]ne day of community confinement (residence in a *community treatment center,* halfway house, or similar residential facility) for one day of imprisonment." U.S.S.G. § 5C1.1(e)(2) (emphasis added). The significance of this provision is not the rate of substitution it defines, but the fact that it

defines one at all. For if confinement in a community treatment center were considered the equivalent of imprisonment, there would be no need to explain how the two modes of punishment could be substituted for one another. The inclusion of this provision once again demonstrates that the Commission views confinement in a community treatment center as qualitatively different from a sentence of imprisonment.

In sum, sections 4A1.1, 2P1.1, and 5C1.1 all differentiate confinement in a community treatment center or halfway house from confinement in a prison. Moreover, we find no references in the Guidelines to suggest that the Commission intended to equate the two for the purposes of section 4A1.2(e)(1). Accordingly, we interpret the term incarceration in § 4A1.2(e)(1) to exclude detention in a community treatment center or halfway house. *Accord United States v. Jordan*, 734 F.Supp. 687 (E.D.Pa. 1990).

Our reading of § 4A1.2(e)(1) as not equating confinement in a community treatment center with incarceration also finds support in the rule of lenity. "The policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (quoting *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)). The rule of lenity is rooted in " 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.' " *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) (quoting H. Friendly, Benchmarks 209 (1967)).

Here, the Commission has not clearly said whether confinement in a community treatment center qualifies as incarceration. Yet, for Mr. Latimer—and no doubt for many others who will find themselves in his circumstances—our resolution of this semantic, and seemingly arcane, question

determines whether he is to spend an additional 15 years of his life behind bars. In such a case, the rule of lenity compels us to resolve ambiguities in favor of the criminal defendant and adopt the interpretation imposing the lesser of the two penalties.

Accordingly, we hold that confinement in a community treatment center does not constitute incarceration under the meaning of § 4A1.2(e)(1).

### B

In arguing that confinement in a community treatment center is the equivalent of incarceration under the meaning of § 4A1.2(e)(1), the government relies principally on the case of *United States v. Vanderlaan*, 921 F.2d 257 (10th Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 1429, 113 L.Ed.2d 481 (1991). In *Vanderlaan*, the defendant argued that a sentence imposed under the Narcotic Addict Rehabilitation Act ("NARA") should not be characterized as a sentence of incarceration because it is imposed primarily for the purpose of drug rehabilitation. The Tenth Circuit disagreed, holding that "the Guidelines make no distinction between offenders incarcerated primarily for rehabilitation and those incarcerated simply to remove the offender from society." 921 F.2d at 259.

*Vanderlaan* is distinguishable from the case before us in two significant respects. First, the court in *Vanderlaan* had no occasion to address whether confinement in a community treatment center is the equivalent of incarceration. This is because the sentence imposed on Vanderlaan was not a sentence to a community treatment center, but instead a sentence of continuous confinement in a federal prison. 921 F.2d at 259. Indeed, the court made clear that the reason it distinguished Vanderlaan's sentence from "other types of criminal sentences" not amounting to incarceration was because these other sentences "do not require that an offender be continuously confined in a federal institution." 921 F.2d at 259.[5] Thus, the holding in *Vanderlaan* is

---

5. The sentencing provision in NARA provides

that a defendant may be confined in any institu-

inapplicable to the case of community treatment center confinement, since community treatment centers are not federally-operated facilities, and they do not generally involve continuous, 24–hour confinement.

Moreover, our recognition that the Guidelines distinguish between incarceration and confinement in a community treatment center is not in tension with the Tenth Circuit's reasoning in *Vanderlaan*. *Vanderlaan* stands for the proposition that the purposes for which an individual is confined are not dispositive of whether the confinement amounts to incarceration. Our decision today does not turn on the *purposes* for the defendant's confinement, but rather on the *facility* in which the confinement is served. Simply put, if the facility of confinement is a community treatment center or halfway house, then the confinement does not amount to incarceration for purposes of § 4A1.2(e)(1).

Nor is our holding today in conflict with our prior decision in *United States v. Schomburg*, 929 F.2d 505 (9th Cir.1991). In *Schomburg* we held that a defendant's prior sentence of sixty days in a county jail was properly classified as a "sentence of imprisonment" under § 4A1.1(b), even though the defendant ultimately served this sentence by participating in a weekend work project administered by the Sheriff. Although we acknowledged that the Sheriff had legal discretion to modify the defendant's sentence, we held that it was "the sentence, as pronounced *by the court* at the outset" that determined its classification under the Guidelines. *See id.* at 507 (emphasis added).

By its terms, therefore, the holding in *Schomburg* applies only in cases where a court specifies a sentence of imprisonment. Here, there was no court-specified imprisonment. The sentence was imposed by the Parole Commission and the sentencing order explicitly recommended placement in a community treatment center.

## C

Finally, we recognize that the government's position is supported by *United*

*States v. Rasco*, 963 F.2d 132 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992), a case decided subsequent to the briefing in this case which held that a sentence to a halfway house constitutes incarceration under the Guidelines. Because we find the Sixth Circuit's reasoning in *Rasco* to be unpersuasive, however, we respectfully decline to follow it.

In *Rasco*, the Sixth Circuit held, on facts quite similar to the ones here, that confinement in a halfway house following the revocation of parole constitutes incarceration under the meaning of § 4A1.2(e)(1) of the Guidelines. Ironically, the Sixth Circuit acknowledged that the Guidelines draw a distinction between confinement in a halfway house and confinement in a prison—the very distinction on which we base our holding. *See* 963 F.2d at 136–37 ("We recognize that [our] interpretation arguably conflicts with the background commentary to section 4A1.1 [.... which] seems to equate confinement sentences with sentences of imprisonment and distinguish both from residency in a halfway house."). Yet the court held that this distinction was superseded by another provision in the Guidelines—namely, § 4A1.2(k)—which it interpreted as treating *all* sentences imposed upon revocation of parole as sentences of imprisonment.

Section 4A1.2(k) provides that, in cases where a defendant's parole is revoked, a court is to "add the original term of imprisonment to any term of imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1). This combined sentence is counted as a single sentence, and "used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable." *Id.* The commentary to § 4A1.2(k) explains that the reason the Guidelines combine the "original sentence" and the "sentence given upon revocation" is so that *"no more than three points* will be assessed for a single conviction, even if probation or con-

tion within the federal penal system, including the federal penitentiaries. *See* 18 U.S.C.

§ 4251(c) and 1966 U.S.Code Cong. & Adm. News, at 4245, 4247.

ditional release was subsequently revoked." *Id.* at § 4A1.2, comment (n. 11) (emphasis added).

The Sixth Circuit read section 4A1.2(k) and its commentary as an expression of the Commission's view that a sentence imposed upon revocation of parole, regardless of whether the sentence is served in prison, a halfway house, or a community treatment center, be added to the original term of imprisonment, requiring the sentencing court to count them as a single sentence for purposes of criminal history scoring.

*Rasco,* 963 F.2d at 135. The court thus held that "section 4A1.2(k) precludes a court from treating a sentence imposed upon revocation of parole as a distinct sentence deserving separate counting under section 4A1.1(a), (b), or (c)." *Id.*

As best we can tell, the Sixth Circuit's reasoning appears to rest on the following proposition: that unless sentences to halfway houses and community treatment centers are characterized as "sentence[s] of imprisonment" under § 4A1.2(k), a situation could arise in which a defendant might receive *more* than three criminal history points for a single conviction.[6] Because such a result appears to run contrary to the intention of the commentary, the court reasoned that the Commission must have intended all sentences imposed upon revocation—including sentences to a community treatment center or halfway house—to be classified as "sentence[s] of imprisonment" under § 4A1.2(k) and added to the original terms of imprisonment for purposes of criminal history scoring.

The Sixth Circuit's reasoning has a certain logical appeal, but it rests on an unsupported, and unwarranted, assumption—

that if a sentence imposed upon revocation of parole is *not* classified as imprisonment, then it automatically gets counted as a separate criminal sentence (which than adds an additional point to the defendant's overall criminal history score). We see no basis for such an assumption. Section 4A1.2(k) is the only provision in the Guidelines that addresses the question of post-revocation sentences, and it says nothing about whether the courts are to add an additional point for non-imprisonment sentences imposed upon revocation of parole. In fact, it says nothing at all about non-imprisonment sentences, and thus we see no reason to read such a provision into the Guidelines.[7]

We read section 4A1.2(k) to mean precisely what it says. It does not say that *every* sentence imposed upon revocation should be added to the original sentence of imprisonment, it says only that "term[s] of *imprisonment*" imposed upon revocation should be added to the original sentence. Indeed, this emphasis on imprisonment as the defining characteristic is reinforced further by § 4A1.2(k)(2)(B)(i), where the Guidelines measure the applicability of a revocation sentence by reference to "the date of last release from *incarceration* from such sentence." U.S.S.G. § 4A1.2(k)(2)(B)(i) (emphasis added).

In sum, § 4A1.2(k) uses the terms "imprisonment" and "incarceration," but it does not define these terms. The question remains whether the Commission meant to include confinement in a community treatment center or halfway house under the meaning of these terms, which we believe can only be answered by looking to other

---

**6.** If we assume that the original sentence and the revocation sentence would be counted separately, this result could occur in a case where the initial prison sentence on a conviction exceeded one year and one month (3 points, *see* § 4A1.1(a)) and the *sentence imposed upon revocation was a sentence other than "imprisonment"* (1 point, *see* § 4A1.1(c)). *But see* discussion at 4153.

**7.** Perhaps we would accept the Sixth Circuit's assumption if it were either inherent in the

logic, or indispensable to the structure, of the Guidelines. But it is neither logical nor indispensable. In fact, given that the Commission limits *original* sentences to a community treatment center to only a single criminal history point (whatever their length), we find it entirely plausible that the Commission intended to overlook *post-revocation* sentences to a community treatment center altogether in calculating the defendant's criminal history score. At the very least, we find nothing in § 4A1.2(k) that suggests otherwise.

provisions of the Guidelines, as we have done in Part I(A) *supra*.

## III

■ In the alternative, the government argues that, even if detention in a community treatment center is not incarceration, Latimer was nevertheless incarcerated during the relevant time period because he was detained within a federal prison for approximately three months while he awaited the scheduling of his parole revocation hearing, and then for an additional two and a half weeks pending his subsequent transfer to the community treatment center. We disagree.

To characterize this period of detention as "incarceration" simply because the defendant was physically confined within the walls of a federal prison would subvert the purposes of the Guidelines. The reason the Guidelines focus on prior sentences of incarceration has nothing to do with the fact of incarceration *per se*, but rather with the reason behind the incarceration. The assumption is that crimes which result in incarceration are more serious than crimes which do not. And, thus, a defendant who has been incarcerated in the past is regarded as more culpable, and consequently more deserving of punishment, than one who has never been incarcerated.

However, when the reason behind a period of incarceration is administrative necessity, rather than an adjudication of guilt, this period of incarceration says nothing about the defendant's culpability. Accordingly, it may not provide a basis for sentence enhancement.

In the instant case, the time Latimer spent in custody at the federal prison was entirely administrative in nature. Until Latimer's parole was formally revoked by the Parole Commission, the justification for Latimer's detention was not that he had violated his parole, but rather that he was *suspected* of violating his parole. This period of detention is thus analogous to pretrial custody. The consequences of count-

ing pre-revocation custody as incarceration would be unthinkable: defendants would have their sentences enhanced even if it were later determined at their hearings that they had *not* violated parole. Moreover, since under the old federal sentencing scheme defendants were entitled to release on bail pending the outcome of their parole revocation hearing,[8] the length of a defendant's future punishment could vary substantially based on the mere fortuity of whether he had been able to post bail. We cannot believe the Sentencing Commission intended such bizarre results. Accordingly, we hold that detention pending the outcome of a parole revocation determination does not constitute "incarceration" for purposes of section 4A1.2(e)(1).

Finally, we also reject the government's attempt to characterize as incarceration the time Latimer spent in the penitentiary after his parole was revoked. In our view, this period of detention was analogous to presentence custody when a defendant cannot post bail. In revoking Latimer's parole, the parole commission explicitly recommended that he be "place[d] in a Community Treatment Center." It appears from the record that it took two and a half weeks for the authorities to find an available community treatment center and finalize Latimer's transfer. To punish Latimer with an additional 15 years of prison time for a delay caused by bureaucratic inefficiency would be an affront to basic notions of fairness and just punishment, a result surely not intended by the Guidelines.

Latimer's sentence is VACATED and the case is REMANDED for resentencing.

TROTT, Circuit Judge, dissenting:

I respectfully dissent. I do so because of the time Latimer spent in a federal penitentiary between June 4, 1979 and September 14, 1978 for five bank robberies, which in my calculation would put him in prison for those robberies within the relevant fifteen-year period. *See* U.S.S.G. § 4A1.2(e). This

---

8. *See* 18 U.S.C. § 4214(a)(1)(A)(i-iv). These provisions have now been repealed because the Guidelines eliminate parole, but the provisions were in effect at the time of Latimer's parole revocation hearing.

would make Latimer, who has committed seven bank robberies in Utah, Colorado, Arizona, and California, eligible to be treated as a career offender.

## I

Latimer began serving his 1967 sentence for five separate bank robberies on March 4, 1967, and was paroled on June 20, 1972. A parole violation warrant was issued on June 16, 1977 because Latimer committed another bank robbery in 1973, his sixth. A detainer was also issued because Latimer was then incarcerated for his 1973 bank robbery. On June 4, 1979, Latimer was paroled on the 1973 charges to the detainer. Latimer was then held in custody on the parole violation warrant stemming from his 1967 sentence from June 4, 1979 to August 27, 1979—the day of his parole revocation hearing. Latimer was finally placed in a community treatment center on September 14, 1979, where he stayed until December 19th, when he was released on parole.

The warrant which held Latimer prior to his parole revocation hearing explicitly stated that once executed he was to be held in federal custody. Therefore, from June 4, 1979 to August 27, 1979, Latimer was in a federal penitentiary because of the parole violation of his sentence for the 1967 robberies. The sentencing court is to count a defendant's parole violation as part of the sentence originally imposed. *United States v. Harrington*, 923 F.2d 1371, 1375–76 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991).

Moreover, after Latimer's parole was revoked, on August 27, 1979, the parole board did not choose to release Latimer pending his placement at a community treatment center. Instead, they chose to keep him in a federal penitentiary where Latimer remained until September 14, 1979. By my definition of the term, he was "incarcerated." I would hold that Latimer was in prison for the five 1967 robberies between June 4, 1979 and September 14, 1979. This places Latimer in prison for the 1967 robberies within the fifteen-year period.

Under the circumstances, I am unable to agree with my respected colleagues that a defendant physically confined behind the walls of the United States Penitentiary at McNeil Island and serving time against the sentence at issue is not "incarcerated" on that sentence. Accordingly, I do not find it necessary to reach the difficult question of whether confinement in a community treatment center constitutes incarceration under the meaning of § 4A1.2(e)(1).

Hence, although I concur in the memorandum disposition referred to in footnote 1 of the majority opinion, I dissent as to the holding that Latimer is not a career offender.