**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5069

JOHN PRZENKOP,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5124

ROY JAMES PARKS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5209

GAREY ROGER WALLACE,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-94-50056)

Argued: May 10, 1996

Decided: November 12, 1996

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ronald Edward Schwartz, Cincinnati, Ohio; Martin Patrick Sheehan, Wheeling, West Virginia; Craig Stephen Boda, Daytona Beach, Florida, for Appellants. Thomas Oliver Mucklow, Assistant United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendants John Przenkop, Roy Parks, and Garey Roger Wallace raise evidentiary and sentencing issues[1]  following their convictions

_____

[1] Przenkop seeks reversal of all of his convictions or, in the alternative, a remand for resentencing. Parks seeks reversal on the grounds of insufficiency of evidence of his conviction for conspiracy, and he seeks a new trial on the ground of inadmissible evidence with respect to the conspiracy which had a prejudicial effect on the other counts of which he was convicted. Alternately, Parks claims the district court erred in his sentencing in treating him as a career offender. Wallace has asked for no particular relief. (Brief, Conclusion, p.30.) In order that none of the

2

for conspiracy to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; and for some or all of the various other drugs-related offenses of illegal use of a communications facility to distribute cocaine, 21 U.S.C. § 843(b); distribution of marijuana, 21 U.S.C. § 841(a)(1); possession of cocaine with the intent to distribute, 21 U.S.C.§ 841(a)(1); and interstate transportation in aid of racketeering, 18 U.S.C. § 1952(a)(3).

I

In late February or early March of 1993 Thomas Strohmeyer spoke to his friend Roy Parks and asked him if he could provide marijuana for Strohmeyer to sell. Parks agreed to supply Strohmeyer with a pound of marijuana a month at a price of $1850 to $2000 a pound. Strohmeyer used the marijuana to support his own habit and sold the remaining at a profit of about $300 to $400 a pound. These transactions continued until around October of 1993 when Strohmeyer decided to stop activities for awhile because of a drug raid in the area. During that time Strohmeyer maintained contact with Parks and resumed the same arrangement around January of 1994.

Around the middle of March of 1994 Strohmeyer was introduced to Przenkop and shortly thereafter arranged to purchase an ounce of cocaine from Przenkop for $1200. Przenkop obtained cocaine from a source in New York. Strohmeyer testified that he discussed with both Przenkop and Parks his plan to trade cocaine obtained from Przenkop for marijuana obtained from Parks. Around March 25 or 26, 1994, Przenkop supplied Strohmeyer with the ounce of cocaine Strohmeyer had requested as well as a second ounce which he gave to Strohmeyer

_____

defendants suffer any procedural prejudice on account of our construction of their brief, we will treat the objections to the sufficiency of the evidence which would require a reversal as made by each of the three defendants, and the other objections which would require a new trial as made by each of the three defendants. We consider separately Przenkop's objection to his sentencing and, as well, that of Parks. We do not take into account any objection Wallace may have had to his sentencing, it not having been brought to our attention.

on credit. In accordance with the plan, Strohmeyer traded one ounce of the cocaine for a pound of marijuana from Parks. Strohmeyer then asked Parks for help in finding a buyer for the remaining ounce of cocaine that Przenkop had provided to Strohmeyer on credit. Parks arranged for Strohmeyer to sell a quarter ounce of cocaine to Wallace. Parks informed Strohmeyer that if Wallace liked the cocaine, Wallace might be interested in supplying marijuana in exchange for cocaine on a weekly basis. Strohmeyer sold a quarter ounce of the cocaine through Parks to Wallace for $525. Strohmeyer gave $500 of the money to Przenkop in partial payment for the cocaine he had received on credit, at which time he arranged to obtain a third ounce of cocaine from Przenkop. Shortly thereafter, Strohmeyer became afraid of being caught by the police. On March 29, 1994 he contacted authorities and turned over the remainder of the second ounce of cocaine he had received from Przenkop and the marijuana from Parks and agreed to become an informant. Thereafter working with the authorities Strohmeyer called Przenkop on March 30, 1994 and asked for two additional ounces of cocaine instead of the one ordered prior to March 29. On April 5, 1994, Strohmeyer went to Przenkop's house and with money provided by the authorities paid Przenkop $700 he owed for the cocaine Przenkop had given him on credit. Strohmeyer called Przenkop on April 6, 1994 to see if the additional two ounces of cocaine had arrived and it had not. On April 7, 1994, Strohmeyer asked Parks to set up a meeting with Wallace. Parks arranged the meeting later that same day at which time Strohmeyer and Wallace negotiated to trade cocaine for marijuana at the rate of an ounce of cocaine for a pound of marijuana. Parks was to receive $50 per pound of marijuana from Wallace for his role in bringing him into the agreement, and Strohmeyer was to give Parks up to a third of what Strohmeyer made on the transactions. On April 8, Strohmeyer and Wallace met again and planned a transaction in which Wallace would provide 16 pounds of marijuana in exchange for 16 ounces of cocaine and an additional 9 pounds of marijuana at $1600 a pound for a total of 25 pounds of marijuana. On April 9, 1994 Strohmeyer met Parks and Wallace at a hotel and exchanged cocaine and money supplied by the authorities for the 25 pounds of marijuana from Wallace. Following this transaction, the three were arrested with Strohmeyer being released shortly thereafter.

4

II

Parks claims that the district court used an improper standard for determining the admissibility of evidence, erred in admitting disjointed evidence that was irrelevant to proof of a single conspiracy, and that the evidence was insufficient to establish a single conspiracy because the alleged co-conspirators did not share a common goal. The argument is that because the evidence supported multiple conspiracies rather than a single conspiracy, evidence of communications or transactions between individual co-defendants supporting other multiple conspiracies was outside the scope of and therefore not relevant to the single charged conspiracy. Przenkop likewise claims that the government failed to prove a single conspiracy and that this created a fatal variance in the indictment. Przenkop further claims that the evidence was insufficient to support his conspiracy conviction because the evidence showed only a one time sale on his part and failed to show that he had an ongoing agreement with anyone to buy and sell cocaine.

We are of opinion that the government sustained its burden of proof as to the guilt of each of the defendants for the charged conspiracy. A single conspiracy depends upon the overlap of main actors, methods and goals and exists where there is one overall agreement or general business venture. United States v. Barsanti, 943 F.2d 428, 439 (4th Cir. 1991), cert. denied, 503 U.S. 936 (1992). The question of single or multiple conspiracies is one of fact and properly the province of the jury. United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). "To sustain [a] conspiracy conviction, there need only be a showing that the defendant knew of the conspiracy's purpose and some action indicating his participation." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985). We must uphold the jury verdict if there is substantial evidence, when viewed in the light most favorable to the government, to support the verdict. Glasser v. United States , 315 U.S. 60, 80 (1942).

The indictment states that from about February 1993 to about April 1994 the defendants Garey Roger Wallace, Roy James Parks, John Przenkop, and Dawn Wallace

> did knowingly and willfully combine, conspire, confederate
> and agree and have a tacit understanding with each other

5

and with other persons known and unknown to the grand Jury, to commit an offense against the United States, to wit: to violate Title 21, United States Code, Section 841(a)(1). It was a purpose and object of the conspiracy knowingly and intentionally to possess with intent to distribute and to distribute cocaine . . . and marijuana . . . in violation of Title 21, United States Code, Section 846.

Reviewing the record, we find evidence from which a jury could find that the conspiracy began in February 1993 with the agreement between Strohmeyer and Parks to exchange marijuana for money, that these transactions were temporarily interrupted around October 1993 but resumed around January 1994, and that Przenkop entered the conspiracy in mid-March 1994 when he was informed of the plan and furnished cocaine in furtherance thereof. Przenkop and Parks knew the role that the other played in the plan even though they may not have personally met. The evidence is that prior to Strohmeyer's withdrawal from the conspiracy on March 29, 1994, Przenkop led Strohmeyer to believe that he would and could continue to furnish cocaine in furtherance of the plan. Strohmeyer withdrew from the conspiracy on March 29. As to Wallace, the evidence is that he knew about the overall plan prior to Strohmeyer's withdrawal and a jury could find that he entered the ongoing conspiracy in March when he purchased a quarter ounce of cocaine to try out for future trade. The record shows that the district court properly instructed the jury on single versus multiple conspiracies and indeed the defendants do not challenge the jury instructions.[2] We conclude that there is substantial evidence (Text continued on page 8)

_____

[2] The court instructed the jury that:

> There can be no conspiracy committed where the participation or action of the defendant is exclusively with a Government informant. It takes two to conspire and a Government informer is not a true conspirator. . . .

> The relationship of buyer and seller of cocaine and marijuana, mere agreements of one person to buy cocaine or marijuana which another agrees to sell, absent prior or contemporaneous understandings beyond mere sales agreements, do not prove a conspiracy to possess with intent to distribute and to distribute cocaine or marijuana, even though the persons know that cocaine and marijuana are controlled substances.

6

In such circumstances the buyer's purpose may be merely to buy. The seller's purpose may be merely to sell. There can be no conspiracy where the persons have no joint objective or common purpose. If the purposes of the alleged co-conspirators are different, there is no conspiracy.

In this case, the defendants contend that the Government's proof fails to show the existence of only one overall conspiracy. Rather, the defendants contend that the Government's proof, at best, shows that there were actually several separate and independent conspiracies with various groups of members.

Whether there existed a single unlawful agreement or many such agreements or indeed no agreement at all, is a question of fact for you, the jury, to determine in accordance with the following instructions: When two or more people join together to further one common, unlawful design or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes.

Proof of several separate and independent conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy described in the indictment.

You may find that there was a single conspiracy despite the fact that there were changes in either personnel or activities or both, so long as you find that some of the co-conspirators continued to act for the entire duration of the conspiracy for the purposes charged in the indictment. The fact that the members of the conspiracy are not always identical does not necessarily imply that separate conspiracies exist. On the other hand, if you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership.

Similarly, if you find a particular defendant was a member of

7

to support the jury verdict of guilt as to each defendant's participation in the charged conspiracy.**3**

III

Przenkop next challenges the district court's finding that he was responsible in the conspiracy for four ounces of cocaine rather than the two ounces actually delivered to Strohmeyer. Przenkop claims that the record shows that he had no intent to deliver additional cocaine and that the government failed to prove that he had the ability to deliver an additional two ounces.

Przenkop argues that "after a time, it became clear that Przenkop had no intention of delivering any more cocaine to him." He states that "the testimony of Strohmeyer indicated . . . that in Strohmeyer's opinion, [Przenkop] did not have the intention of ever delivering on that promise." Przenkop has not pointed out the particular testimony which may support this claim. The record does show that Strohmeyer testified that when Przenkop had not obtained the additional cocaine by around April 7, Strohmeyer told Przenkop he couldn't wait any longer and that he needed to go ahead and buy some marijuana. If this is the evidence referred to, we do not find it adequate to rebut as a matter of law the evidence that Przenkop delivered two ounces on the prior occasion and that he indicated to Strohmeyer that he would and could deliver that amount again. The district court's finding that Przenkop had the intent and capability of delivering an additional two ounces of cocaine is not clearly erroneous. See U.S.S.G. § 2D1.1, Application Note 12, which was relied upon by the district court.

_____

another conspiracy and not the one charged in the indictment, then you must acquit the defendant of the conspiracy charged.
**3** We need not discuss at length the defendants' claims of inadmissible evidence, which essentially are that the district court erroneously admitted the statements of co-conspirators as going to the guilt of others than the speaker. The district court correctly applied the preponderance of the evidence rule of <u>Bourjaily v. United States</u>, 483 U.S. 171, 181 (1987), to show the existence of a conspiracy, before it admitted the evidence. So far as the objection may be that a similar preponderance of the evidence standard should apply to relevancy, that objection is not well taken.

Parks was sentenced as a career offender under U.S.S.G. § 4B1.1. He objects to the finding of the district court that he was a career offender.

A career offender under § 4B1.1 is a defendant at least 18 years of age at the time of the offense, which offense is a felony and which is either a crime of violence or a controlled substance offense, and the defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. Under U.S.S.G. § 4A1.2(e)(1), the prior convictions which are counted are those with a prior sentence of imprisonment exceeding one year and one month imposed within 15 years of the defendant's commencement of the instant offense, and also any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such 15-year period.

The defendant claims the period for the commencement of the offense under § (e)(1) should end on April 1, 1994. (Brief p.28) The district court used the date of April 9, 1994 in accordance with the probation officer's report, so there is no issue in the case as to that date.

Parks was convicted in Texas July 27, 1982 of delivery of marijuana and sentenced to two years, so that conviction counts under § (e)(1). Parks was convicted in Ohio of robbery on April 7, 1978 and sentenced to at least four years but not more than 25 years in prison. On that same date, in Ohio, he was convicted of escape and sentenced to at least six months but not more than five years in prison. These two sentences ran consecutively on the order of the trial court. Parks was furloughed[4] from his sentences for these offenses September 17, 1979, so he was incarcerated on account of the sentences during part of the 15-year period between April 9, 1979 and April 9, 1994.

At the time Parks was sentenced in Ohio on the convictions for robbery and escape, and until 1996, § 2929.41 of the Ohio Rev. Code provided that "[w]hen consecutive sentences of imprisonment are

_____

[4] Furlough and parole are apparently different in Ohio. The parties have treated September 17, 1979 as the date of Parks' release from incarceration, and we will do the same.

9

imposed for a felony . . . [by the trial court] the minimum term to be served is the aggregate of the consecutive minimum terms imposed, and the maximum term to be served is the aggregate of the consecutive maximum terms imposed." Section 2929.41(C)(1). See Baldwin's Ohio Rev. Code Ann., 1996. The Committee Comment from the 1975 replacement volume of Page's Ohio Rev. Code Ann. provides with respect to like sentences as those involved here:"For example, if an offender is sentenced from 2-5 years for grand theft and 7-25 years for aggravated robbery, the sentence to be served is 9-30 years." Applying Ohio law, Parks' 1978 sentence in Ohio was thus not less than 4 years and 6 months but not more than 30 years. His incarceration for those aggregated offenses lasted until September 17, 1979, which was within the 15-year period under § (e)(1), the sentence imposed having exceeded one year and one month.

Parks argues that the district court has, as he calls it, blended the robbery and escape sentences so as to fit within the 15-year period. Without attempting to define Parks' use of the term blended, we are of opinion that under the Ohio law under which Parks was sentenced, there was one sentence being served on account of the robbery and escape convictions from which he was released at the earliest, September 17, 1979. Thus the robbery and escape convictions count under § (e)(1).

Parks' next argument is that the escape conviction may not be used in any event in computing the time Parks was serving on account of the Ohio convictions. The argument goes that escape is not a crime of violence. That argument is foreclosed by our decision in United States v. Hairston, 71 F.3d 115 (4th Cir. 1995), cert. denied, 64 U.S.L.W. 3763 (U.S. May 13, 1996). Parks' escape offense was a felony in violation of Ohio Rev. Code § 2921.34.

Thus, we hold that Przenkop's and Parks' objections to their sentences are without merit.

The convictions of each of the three defendants and the sentences of Przenkop and Parks (Wallace's sentence not being noticed on appeal), are accordingly

10

AFFIRMED.**5**

_____

**5** Ohio law presently would have required the sentences imposed in this case to be served concurrently. Section 2929.41, Baldwin's Ohio Revised Code Ann., 1995 amendment effective July 1, 1996. Even if some kind of concurrent sentencing rule were applied, however, Parks' argument must yet fail. As we have shown, the escape charge is a crime of violence, for which a sentence was imposed. So Parks has, in fact, three controlled substance or crimes of violence convictions rather than merely two. In United States v. Vanderlaan, 921 F.2d 257 (10th Cir. 1990), cert. denied, 499 U.S. 954 (1991), the court held that an indeterminate sentence of not to exceed 10 years, with incarceration under the Narcotic Addict Rehabilitation Act for treatment, should be counted under §(e)(1). Alternately, we follow Vanderlaan as to the indeterminate sentence for escape and hold that Parks should yet be considered a career offender. Parks' best case is that he was incarcerated until September 17, 1979 for either one offense or two offenses resulting from his 1978 convictions for robbery and escape. Since both robbery and escape are crimes of violence, and since the sentences for each exceed one year and one month, it is a matter of indifference as to whether Parks was incarcerated for one or the other, or both, until September 17, 1979. In all events, he was incarcerated for crimes of violence upon sentences each of which exceeded one year and one month, such incarceration extending into the period within 15 years of April 7, 1994.