**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　v.

DENNIS EDWARD SULLIVAN,
　　　　　*Defendant-Appellant.*

No. 06-30546

D.C. No.
CR-97-42-GF-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
April 12, 2007—Seattle, Washington

Filed September 28, 2007

Before: Alex Kozinski and Raymond C. Fisher,
Circuit Judges, and Andrew J. Guilford,* District Judge.

Opinion by Judge Guilford

---

*The Honorable Andrew J. Guilford, United States District Judge for the Central District of California, sitting by designation.

13339

**COUNSEL**

David F. Ness, Assistant Federal Public Defender, and Anthony R. Gallagher, Chief Federal Defender, Billings, Montana, for the defendant-appellant.

Eric B. Wolff, Assistant United States Attorney, Billings, Montana, for the plaintiff- appellee.

**OPINION**

GUILFORD, District Judge:

We consider whether Defendant-Appellant Dennis Edward Sullivan ("Sullivan") was under federal supervised release when he failed a drug test, thus violating his supervised release terms. This determination turns on whether Sullivan's detention in a Montana community pre-release center ("Pre-Release Center") was an "imprisonment" under 18 U.S.C. § 3624(e) ("§ 3624(e)"). We conclude that it was not an imprisonment, and the district court therefore lacked jurisdiction because Sullivan's supervised release had expired.

**Facts**

Sullivan failed a drug test by testing positive for marijuana on August 24, 2006. The United States District Court for the District of Montana ruled this was a violation of Sullivan's supervised release, finding that it had not expired. This supervised release arose from a 1998 federal conviction for posses-

sion of a stolen money order. For this conviction, Sullivan was sentenced to 18 months in prison and three years of supervised release that required him to refrain from any unlawful use of a controlled substance. As a result of his violation of the terms of his supervised release, Sullivan was sentenced to 12 additional months in prison and 20 more months of supervised release.

The district court ordered Sullivan's original prison sentence to run concurrently with sentences from the Montana state court. On February 21, 2001, Sullivan was transferred from a Montana prison to a Pre-Release Center. [Montana Department of Corrections Adult Offender Internal & External Movement Record p. 1] On September 6, 2002, Sullivan was released from the Pre-Release Center. *Id.* Sullivan was later imprisoned on a state parole violation. Both parties agree that all of Sullivan's time in custody, other than in a Pre-Release Center, tolled his term of supervised release.

Sullivan's entire criminal history need not be detailed since the dispute centers on whether Sullivan's federal supervised release initially commenced when he was transferred from a Montana prison to a Pre-Release Center, and whether his supervised release time was tolled while in the Pre-Release Center.

We review *de novo* whether the district court had jurisdiction to revoke a term of supervised release. *United States v. Vargas-Amaya*, 389 F.3d 901, 903 (9th Cir. 2004); *United States v. Morales-Alejo*, 193 F.3d 1102, 1104 (9th Cir. 1999).

**Analysis**

Sullivan argues that his supervised release ended before he failed his drug test because his supervised release commenced when he was transferred from a Montana prison and was not tolled while in the Pre-Release Center. Conversely, the government argues that Sullivan's supervised release had not

ended before he failed his drug test because his supervised release time did not run while he was in the Pre-Release Center, following his transfer from a Montana prison.

[1] Section 3624(e) provides the method for calculating supervised release time in this case:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime . . . .

Section 3624(e) focuses our analysis on the words "imprisonment" and "imprisoned" to describe the type of confinement that controls commencement and tolling of supervised release time. If detention in a Pre-Release Center constitutes imprisonment, Sullivan's supervised release did not commence until he was released from the Pre-Release Center, and remained in effect when he failed his drug test. Both federal law and Montana state law indicate that time in community treatment centers like Montana's Pre-Release Center is not "imprisonment." Thus, here, we can look to both federal and state law without deciding which law controls in determining if there has been an "imprisonment" under § 3624(e) in Montana's Pre-Release Center. We also need not determine whether detention in a Pre-Release Center is "probation or supervised release or parole" running "concurrently" under § 3624(e) with Sullivan's supervised release, as we reach the same result by finding Pre-Release Center time is not imprisonment.

[2] Federal law, in various contexts, classifies detention in facilities like a Pre-Release Center as different from imprison-

ment. The Supreme Court has held that detention at a community treatment center, where the defendant is not subject to the control of the Bureau of Prisons, is not "imprisonment" and therefore cannot be credited against a defendant's prison sentence. *Reno v. Koray*, 515 U.S. 50, 59 (1995). We cited *Reno* in *Tanner v. Sivley*, 76 F.3d 302, (9th Cir. 1996), which held that confinement in a community treatment center is different from "official detention" under the statute involved. *Id.* at 303-04. In *United States v. Latimer*, 991 F.2d 1509 (9th Cir. 1993), we also held that based on the plain language and structure of the United States Sentencing Guidelines, community confinement is not incarceration or imprisonment. *Id.* at 1511-15. This mirrors the Department of Justice's Office of Legal Counsel's interpretation that under the Federal Sentencing Guidelines, "[c]ommunity confinement does not constitute imprisonment for purposes of a sentencing order." OLC Opinion of Dec. 13, 2002.

Our distinction also has been echoed by other circuits. *See United States v. Cintron-Fernandez*, 356 F.3d 340, 347 (1st Cir. 2004) (explaining that under § 5C1.1(d) and (e) "home detention and community confinement are considered as 'Substitute Punishments' for imprisonment, not merely different forms of imprisonment itself"); *United States v. Elkins*, 176 F.3d 1016, 1020 (7th Cir. 1999); *United States v. Horek*, 137 F.3d 1226, 1229 (10th Cir. 1998); *United States v. Pielago*, 135 F.3d 703, 713 (11th Cir. 1998), *United States v. Adler*, 52 F.3d 20, 21 (2d Cir. 1995). *But see United States v. Rasco*, 963 F.2d 132, 135-36 (6th Cir. 1992) (holding that confinement in a community treatment center due to a parole revocation was "imprisonment").

**[3]** Because our court and other federal courts in different settings consistently find facilities comparable to a Pre-Release Center not to be imprisonment, we likewise find that time spent in a Pre-Release Center is not imprisonment under § 3624(e). This holding is in line with our practice to "interpret '[t]he statutory scheme of sentencing, including the

Guidelines . . . harmoniously as a whole.' " *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1995) (quoting *United States v. Shorthouse*, 7 F.3d 149, 152 (9th Cir. 1993) (interpreting § 3624(e)).

**[4]** We also look to Montana state law, which helps determine the nature of Pre-Release Centers in Montana. The Montana Supreme Court stated that Montana's "prerelease centers are part of the community corrections system which exists *as an alternative to imprisonment*." *State v. Chandler*, 922 P.2d 1164, 1166 (Mont. 1996) (emphasis added). The court explained that "[t]he correctional policy of the State of Montana is to deal with nonviolent offenders in ways *other than imprisonment*." *Id.* (emphasis added). Emphasizing the rehabilitative aspect of these alternatives to imprisonment, the court noted that "[s]uch a 'facility or program' contemplates and, in fact, mandates that participants will be involved with employment, educational services, vocational training, resources, treatment and restitutional activities outside of the confines of the particular place where they are required to reside . . . ." *Id.* at 1167. Thus, while describing the features and goals of its state's Pre-Release Centers, the Montana Supreme Court repeatedly indicated that detention in a Pre-Release Center was not imprisonment.

The features and goals of Pre-Release Centers in Montana and elsewhere are different from imprisonment, and instead are much more similar to those of federal supervised release. The United States Supreme Court has stated:

> Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration. See 18 U.S.C. § 3553(a)(2)(D); United States Sentencing Commission, Guidelines Manual §§ 5D1.3(c), (d), (e) (Nov. 1998); see also S. Rep. No. 98-225, p. 124 (1983) (declaring that "the primary goal [of supervised

> release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release").

*United States v. Johnson*, 529 U.S. 53, 59 (1999).

The many cases finding that detention in facilities like Pre-Release Centers is not imprisonment are supported by the recognition that such facilities use different methods and seek different goals than imprisonment.

**[5]** We therefore conclude that Sullivan's supervised release period began on February 21, 2001, when he was transferred to a Pre-Release Center. As a result, Sullivan's supervised release period expired before the U.S. Probation Office filed a petition for revocation of supervised release on August 31, 2006. The district court therefore had no authority to revoke Sullivan's supervised release. See *United States v. Morales-Alejo*, 193 F.3d 1102, 1104 (9th Cir. 1999).

**REVERSED**.