**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

RICHARD MILLER,
        *Defendant-Appellant.*

No. 07-30481

D.C. No.
CR-04-00264-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted
August 6, 2008—Seattle, Washington

Filed November 7, 2008

Before: Harry Pregerson, William C. Canby, Jr., and
John T. Noonan, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Nicolas V. Vieth, Federal Defender Services of Idaho, for the defendant-appellant.

Thomas E. Moss, United States Attorney; Michelle R. Mallard, Assistant United States Attorney, United States Attorney's Office, for plaintiff-appellee.

**OPINION**

PREGERSON, Circuit Judge:

## I. Introduction

### A. *Background*

Richard Miller appeals the district court's denial of his "Motion to Dismiss Revocation Petition and Request for Immediate Release from Custody" ("Motion to Dismiss"). Relying primarily on *United States v. Sullivan*, 504 F.3d 969 (9th Cir. 2007), Miller argues that the district court lacked jurisdiction to revoke his supervised release and sentence him because, according to Miller, at the time the violation occurred, his supervised release term had ended.

We affirm the district court's conclusion that *Sullivan* does not apply here. Unlike the defendant in *Sullivan*, Miller was transferred to the Bannock County Jail Work Release Program[1] (hereinafter "Bannock County Jail" or "Work Release Program") while still serving his federal sentence. This transfer occurred pursuant to 18 U.S.C. § 3624(c), under which Miller remained "imprisoned" and under the custody of the Bureau of Prisons ("BOP") until his release from Bannock County Jail. 18 U.S.C. § 3624(c) (2008), *amended by* Pub. L. 110-117, Title V, § 505, Jan. 7, 2008, 121 Stat. 2542.[2] *Sullivan*, by contrast, involved a state prisoner in Montana who, while serving a state sentence, was transferred to a Montana state pre-release center.

We agree with the district court that the time that Miller

---

[1]Such pre-release programs are also commonly referred to as halfway houses, community corrections centers, work release programs and residential reentry centers.

[2]All references herein to this statute are to the version of 18 U.S.C. § 3624 effective January 7, 2008 to April 8, 2008.

spent at Bannock County Jail constituted "imprisonment," and not, as Miller contends, supervised release. Miller's supervised release term therefore did not commence until his release from the Bannock County Jail Work Release Program. Accordingly, the district court did have jurisdiction to revoke Miller's supervised release and sentence him to fourteen months imprisonment and twenty-one months of supervised release. We therefore AFFIRM the district court's denial of Miller's Motion to Dismiss.

B. *Facts*

In September 2002, Richard Miller was charged in Utah with possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[3] On January 31, 2003, Miller entered a guilty plea and was sentenced to thirty months in custody and three years of supervised release. On March 27, 2003, Miller entered the Federal Correctional Institution in Florence, Colorado to begin his prison sentence.

Approximately fifteen months into his thirty-month sentence, on June 22, 2004, Miller was transferred to the Bannock County Jail Work Release Program in Pocatello, Idaho. Miller's transfer was pursuant to 18 U.S.C. § 3624(c), which requires the Bureau of Prisons to provide for a pre-release program where practicable during the last six months of a person's incarceration. *United States v. Miller*, 2007 WL 4261929, at *1 (D. Idaho Nov. 30, 2007). During his incarceration at Bannock County Jail, Miller was required to "go directly to [his] place of employment and[,] at the end of each workday, return directly to the jail following work." And, during his incarceration, Miller was required to attend counseling sessions, receive treatment, and make nominal "subsistence

---

[3]Miller was stopped for a minor traffic infraction: driving without registration or a driver's license. Officers also found certain drug paraphernalia consistent with the sale or distribution of methamphetamine and ammunition.

payments" to Bannock County for sustenance and for his housing.

Under the terms of the Work Release Program, Miller remained under the custody of the BOP while he was incarcerated at Bannock County Jail. Miller was also required to follow and abide by all rules set forth by Bannock County Jail and the Bureau of Prisons. The Work Release Program's terms stated that "willful failure to return to [Miller's] place of confinement at the time specified by the jail officials" could be considered an "escape" or an "absconding."

Miller remained at Bannock County Jail until October 6, 2004, when he sustained a work-related injury to his hand. The injury prevented Miller from continuing his job. As a result, Miller was placed on house arrest beginning October 6, 2004 and ending December 17, 2004.[4] The following day, December 18, 2004, pursuant to 18 U.S.C. § 3205, the Utah Federal District Court transferred jurisdiction from the District of Utah to the District of Idaho. The order, entitled "Transfer of Jurisdiction," also stated that Miller's three-year supervised release term was set to commence on December 18, 2004 and terminate on December 17, 2007.

On August 4-5, 2007, Miller was stopped for a traffic violation. The officers determined that Miller was under the influence of drugs and then seized 2.2 grams of methamphetamine and various drug paraphernalia from Miller's vehicle. Miller admitted to and tested positive for methamphetamine use. On August 7, 2007, the government filed a petition alleging that Miller had violated the terms of his supervised release ("First Supervised Release Petition"). On September 11, 2007, the district court sentenced Miller to one month imprisonment

---

[4]Miller's placement on house arrest after his injury was consistent with 18 U.S.C. § 3624(c)(2), which authorizes the Bureau of Prisons to "place a prisoner in home confinement" for a limited period of time. 18 U.S.C. § 3624(c)(2).

with credit for time served and thirty-five months of additional supervised release.

Approximately two months later, on October 18-19, 2007, Miller tested positive for methamphetamine use and was charged with associating with persons engaged in criminal activities, failing to submit for a mandatory drug test, and operating a motor vehicle. On October 30, 2007, the government filed a second petition ("Second Supervised Release Petition") alleging that Miller violated his supervised release terms.

On November 19, 2007, Miller moved to dismiss the government's Second Supervised Release Petition for lack of jurisdiction. The Idaho Federal District Court denied Miller's motion and his timely appeal is before us.

## II.   Discussion

### A.   *The Parties' Contentions*

Miller asserts that the district court lacked jurisdiction to revoke his supervised release and sentence him to an additional fourteen months imprisonment and twenty-one months of supervised release. Specifically, Miller argues that the Idaho Federal District Court erred in finding that his three-year supervision period commenced on December 18, 2004, the date that Miller was *released from* Bannock County Jail. Instead, Miller argues, his three-year supervised release period began on June 22, 2004, the date that he was *transferred to* Bannock County Jail, and ended on June 21, 2007.

In short, Miller's theory is this: time spent in a pre-release center such as Bannock County Jail does not, under any circumstances, constitute "imprisonment" under § 3624(c). Rather, Miller contends, time spent in a pre-release center constitutes supervised release. Miller relies on *Sullivan* for this proposition. Miller argues that *Sullivan* requires us to

conclude that his supervised release term commenced on the date that he was transferred to the Bannock County Jail Work Release Program, despite the fact that the transfer occurred while Miller was still serving his federal sentence. Therefore, Miller contends, the Idaho Federal District Court lacked jurisdiction to revoke his supervised release and sentence him for his August and October 2007 supervised release violations, because, as Miller argues, his supervised release term ended on June 21, 2007.

The government contends—and we agree—that *Sullivan*, which involved a state prisoner serving a state sentence, does not apply here. Miller's confinement as a federal prisoner serving a federal sentence at Bannock County Jail *did* constitute "imprisonment;" the time that he spent in the Bannock County Jail Work Release Program was not part of Miller's supervised release term. According to the government—and, as the district court concluded—Miller's three-year supervised release term commenced on December 18, 2004, the date that he was *released from* Bannock County Jail, and ended three years later on December 17, 2007. Therefore, the district court did have jurisdiction to revoke Miller's supervised release and sentence him for the August and October 2007 violations.

B.   *Analysis*

   1.   Statutory Scheme

[1] Section 3621 of Title 18 of the United States Code provides:

> (a)   Commitment to custody of Bureau of Prisons. —A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the [BOP] until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

(b)   Place of imprisonment.—The Bureau of Pris-
ons shall designate the place of the prisoner's impris-
onment. The [BOP] may designate any available
penal or correctional facility that meets minimum
standards . . . established by the [BOP], whether
maintained by the Federal Government or otherwise
and whether within or without the judicial district in
which the person was convicted, that the [BOP]
determines to be appropriate and suitable . . . .

18 U.S.C. § 3621 (2008), *amended by* Pub. L. No. 109-248,
Title VI, § 622, July 27, 2006, 120 Stat. 634.[5] Section 3621
gives the BOP considerable discretion in assigning a person
to a particular facility—whether or not that facility is main-
tained by the federal government—for purposes of serving a
term of imprisonment. Regardless of where the BOP elects to
transfer a person, she or he remains under BOP custody until
the prescribed term of "imprisonment" expires.

**[2]** As the district court underscored, the BOP's authority
is made explicit, and the effect of such a placement is plainly
stated in § 3624(c) and (e), which provide, in pertinent part:

(c)   Pre-release custody.—The Bureau of Prisons
shall, to the extent practicable, assure that a prisoner
serving a term of imprisonment spends a reasonable
part, not to exceed six months, of the last 10 per cen-
tum of the term to be served under conditions that
will afford the prisoner a reasonable opportunity to
adjust to and prepare for the prisoner's re-entry into
the community.

. . .

---

[5]All references herein to this statute are to the version of § 3621 that
was effective July 27, 2006 to April 8, 2008.

> (e)  Supervision after release.—A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. *The term of supervised release commences on the day the person is released from imprisonment* . . . .

§ 3624 (emphasis added). Read together, Sections 3621(b) and 3624(c) give the BOP explicit authority to "designate the place of the prisoner's imprisonment," § 3621(b), and "spend[ ] a reasonable part . . . of the [term of imprisonment] to be served [in] conditions that . . . prepare for the prisoner's reentry into the community." § 3624(c).

### 2.  *United States v. Sullivan*

**[3]** Relying exclusively on *United States v. Sullivan*, Miller urges us to conclude that his transfer to Bannock County Jail on June 22, 2004, just fifteen months into his thirty-month sentence, marked the beginning of his federal supervised release term. But we agree with the district court that "context provides important distinctions" and that "*Sullivan*'s holding is applicable only to substantially similar factual circumstances." *Miller*, at *3. Unlike Miller—who was serving a *federal* sentence at the time of his transfer to the Work Release Program—the defendant in *Sullivan* was serving a *state* sentence when transferred to a Montana state pre-release center. The two cases are substantially different.

*Sullivan* involved a defendant who was concurrently serving three sentences: (1) a federal sentence of eighteen months followed by three years of supervised release; (2) a five-year state sentence; and (3) a twenty-year state sentence with ten years suspended. 504 F.3d at 970. The *Sullivan* court noted that "all of Sullivan's time in custody, other than in a Pre-

Release Center, tolled his term of supervised release." *Id.* At the time of his transfer to the Montana state pre-release center, Sullivan had completed the federal portion of the three concurrent sentences.[6] 504 F.3d at 970.

[4] Sullivan argued that his supervised release began on the day he was *transferred to* the Montana state pre-release center. To support his argument, Sullivan relied primarily on § 3624(e), which states that "supervised release commences on the day [that a] person is released from imprisonment." In *Sullivan*, the government disagreed, arguing that Sullivan's supervised release commenced only upon his *release from* the Montana state pre-release center. The crucial issue before the *Sullivan* court was whether Sullivan's detention in the Montana state pre-release center constituted "imprisonment" under § 3624(e). *Sullivan*, 504 F.3d at 971.

[5] To determine "the type of confinement that controls commencement and tolling of supervised release time," our court focused on the definition of the term "imprisonment" as it is used in § 3624(e). *Sullivan*, 504 F.3d at 971. The *Sullivan* court stated:

The Supreme Court has held that detention at a com-

---

[6]Even though *Sullivan*'s factual findings are not before us, Miller argues that the district court erred in distinguishing *Sullivan* by erroneously relying on the fact that Sullivan had completed his federal sentence—and was therefore serving his two state sentences—at the time of his transfer to the Montana state pre-release center. Petr.'s Br. 4, n.2.

The district court addressed Miller's concern and resolved the issue, noting that, "although [it is] unclear from the decision [in *Sullivan*, Sullivan's] brief states that after discharging his federal sentence, he was released on state parole." *Miller*, at *2, n.3. That is to say that when Sullivan was later imprisoned on a state parole violation, Sullivan had already completed his federal sentence. 504 F.3d at 970. On that basis, Judge Winmill properly distinguished *Sullivan* who, unlike Miller, was transferred to the Montana state pre-release center only after Sullivan's federal sentence had ended. We agree with the district court's cogent analysis.

munity treatment center, *where the defendant is not subject to the control of the Bureau of Prisons*, is not "imprisonment" and therefore cannot be credited against a defendant's prison sentence.

*Id.* (citing *Reno v. Koray*, 515 U.S. 50, 59 (1995)) (emphasis added). Because Sullivan was serving a state sentence—and therefore was no longer under BOP custody at the time of his transfer to the Montana state pre-release center—the time that he spent there did not constitute "imprisonment" under § 3624(e). Therefore, the *Sullivan* court held, the time that Sullivan spent in the Montana state pre-release center—a period of time which commenced while Sullivan was serving a state sentence—did not constitute "imprisonment" under § 3624(e). 504 F.3d 969. Sullivan's supervised release term commenced on the date that he was transferred to the Montana state pre-release center.

**[6]** Miller overlooks the critical distinction between the case at hand and *Sullivan*. Whereas Sullivan was transferred to the Montana state pre-release center while serving a state sentence, Miller was transferred to the Bannock County Jail Work Release Program during, and as part of, his federal sentence and pursuant to the mandate of § 3624(c), which defines the pre-release component as part of the term of imprisonment.[7] § 3624(c). Unlike Miller, Sullivan was not under BOP cus-

---

[7]The district court adequately articulated Miller's erroneous reliance on *Sullivan*:

> At first blush, it would appear that *Sullivan* stands for the proposition that pre-release programs are not imprisonment in any context. However, *context provides important distinctions and reveals that Sullivan's holding is applicable only to substantially similar factual circumstances; i.e., where an individual has completed his federal sentence but is still serving a concurrent state sentence* and is sent to a state pre-release center. Here, [Miller] was placed in pre-release custody at the end of his *federal* sentence.

*Miller*, at *3 (emphasis added).

tody when he was transferred to the Montana state pre-release program. *Miller*, at *2. Because Miller remained under BOP custody while he was at Bannock County Jail, his supervised release did not—and could not—commence until he was released from the Work Release Program.

## III.   Conclusion

The district court properly held that *Sullivan* does not apply here. Unlike Miller, the defendant in *Sullivan* had already completed his federal sentence and was no longer under BOP custody at the time that he was transferred to the Montana state pre-release center. *See also Rivera v. Clark*, 2008 WL 340653, at *5 (N.D. Cal. Feb. 5, 2008) (reasoning that § 3624(c) and 3624(e) "clearly contemplates that when an inmate is transferred from a federal prison to a federal [pre-release center], he or she remains 'imprisoned' ");[8] *see also United States v. Regen*, 551 F. Supp. 2d 963 (C.D. Cal. 2008) (holding that defendant's "confinement in [a pre-release center] was still part of his term of federal imprisonment [because], unlike in *Sullivan*, it was a form of detention that *was* 'subject to the control of the Bureau of Prisons.' " (quoting *Sullivan*, 504 F.3d at 971)). The Bannock County Jail Work Release Program was part of Miller's term of imprisonment. His transfer to Bannock County Jail, which occurred pursuant to the BOP's authority as outlined in § 3624(c), did not constitute the beginning of Miller's supervised release term.

For the reasons discussed above, we AFFIRM the district

---

[8]*Rivera* further contemplated the logical fallacy that would result if we were to read *Sullivan* the way that Miller does: an inmate's supervised release term would begin upon her or his transfer to a pre-release center and "the inmate would never complete [her or his] term of imprisonment." *Rivera*, 2008 WL 340653, at *5.

court's denial of Miller's Motion to Dismiss.

**AFFIRMED.**