M. SMITH, Circuit Judge,
dissenting:
The majority holds that supervised release may begin and end before a person is released from prison. Because the Supreme Court has squarely held otherwise, and the majority’s conclusion defies both common sense and the reasoning of binding precedent, I respectfully dissent. See United States v. Johnson, 529 U.S. 53, 57, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (“Supervised release does not run while an individual remains in the custody of the Bureau of Prisons.”) (emphasis added).
As an initial matter, the majority misconstrues the issue here. The question is not, as the majority contends, whether a term of supervised release was tolled. The issue is whether a term of supervised release began when an individual was not free to leave a prison. I would hold that binding authority dictates that supervised release cannot begin until one is physically released from prison.
The commencement and tolling provisions of 18 U.S.C. § 3624(e) are distinct. They “work in different ways” and contain different statutory requirements. See 18 U.S.C. § 3624(e); Tobey v. United States, 794 F.Supp.2d 594, 600 (D.Md.2011). Unlike the tolling provision, the commencement provision does not contain any requirement that imprisonment be “in *1127 connection with a conviction.” Compare id. (“The term of supervised release commences on the day the person is released from imprisonment....”), with id. (“A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.”). Thus, under the commencement provision, a person’s term of supervised release cannot begin until he or she is allowed physically to leave a prison. See id. What never begins cannot end. Whether the physical confinement is imposed pursuant to a sentence or otherwise in connection with a conviction is irrelevant; the purpose of and reasons for the prisoner’s confinement do not matter. Id. It is the fact of physical confinement that controls. See id. This critical difference between § 3624(e)’s tolling and commencement provisions eludes the majority. The majority simply ignores § 3624(e)’s clear command in the commencement provision that a term of supervised release can neither begin nor end while an individual physically remains in the Bureau of Prisons’s custody. See Johnson, 529 U.S. at 57, 120 S.Ct. 1114.
According to the majority, DefendanbAppellant Marc Christopher Turner’s (Turner) term of supervised release ran while he was still physically in prison. No evidence suggests that he was free to leave, or that he physically left the premises of the prison. Rather than releasing Turner, Plaintiff-Appellee United States of America (the Government) filed a “Certification of a Sexually Dangerous Person” under 18 U.S.C. § 4248(a) the day Turner’s sentence was set to expire. The filing of this certification automatically and indefinitely stayed Turner’s release from prison. See 18 U.S.C. § 4248(a) (“A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.”); United States v. Comstock, — U.S. -, 130 S.Ct. 1949, 1954, 176 L.Ed.2d 878 (2010) (“When such a certification is filed, the statute automatically stays the individual’s release from prison, thereby giving the Government an opportunity to prove its claims at a hearing through psychiatric (or other) evidence.”) (internal citations omitted). Therefore, even though Turner completed his sentence, he was not allowed to leave prison. At all relevant times, he remained in the custody of the Bureau of Prisons (BOP).
In Johnson, the Supreme Court interpreted 18 U.S.C. § 3624(e), the statute controlling when a term of supervised release begins. See Johnson, 529 U.S. at 57, 120 S.Ct. 1114. Under § 3624(e), a “term of supervised release commences on the day the person is released from imprisonment. ...” 18 U.S.C. § 3624(e). In construing the meaning of “released from imprisonment,” the Supreme Court clarified that the question is not whether a person’s sentence ends, but whether a person is physically released from confinement. See Johnson, 529 U.S. at 57, 120 S.Ct. 1114 (defining “release” in the context of imprisonment as “meanfing] ‘[t]o loosen or destroy the force of; to remove the obligation or effect of; hence to alleviate or remove; ... [t]o let loose again; to set free from restraint, confinement, or servitude; to set at liberty; to let go.’ ”). Because “the ordinary, commonsense meaning of release is to be freed from confinement,” a person may not be released while still imprisoned. Id. Further emphasizing that physical freedom from confinement is required for a person’s term of supervised release to begin, the Supreme Court explained that supervised release does not begin while a person remains in the BOP’s custody. See id. The Court also explained that other language in § 3624(e) supported its construction, *1128 such as the phrase “on the day the person is released” in the second sentence of § 3624(e) “suggesting] a strict temporal interpretation, not some fictitious or constructive earlier time.” Id. Accordingly, a person’s term of supervised release does not commence, as a matter of law, once a person completes his lawful term of imprisonment. See id. at 58, 120 S.Ct. 1114.
Under Johnson, Turner’s term of supervised release could not have begun while he was awaiting a civil commitment hearing because he was not physically freed from confinement. See id. at 57, 120 S.Ct. 1114. To say that Turner was “released” for purposes of his supervised release beginning while he physically remained in prison “diminishes the concept the word [‘release’] intends to convey.” Id. It also treats the completion of a sentence and release from imprisonment as interchangeable, despite the Supreme Court’s admonition that we not do so. See id. at 58-59, 120 S.Ct. 1114.
It is true that the Supreme Court in Johnson interpreted § 3624(e) before the Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act), Pub.L. No. 109-248, 120 Stat. 587 became law. The Adam Walsh Act is the genesis of the current version of 18 U.S.C. § 4248(a), which automatically stays an individual’s release from prison when the Government certifies to a federal district judge that a prisoner has engaged in sexually violent activity or child molestation in the past, and that he suffers from a mental illness making him dangerous to others. See Comstock, 130 S.Ct. at 1954. A prisoner may not be released until a hearing at which the Government has an opportunity to prove its claims. See id. Thus, the Adam Walsh Act requires an individual to remain physically confined in prison despite completing his or her sentence.
Working in tandem, the Adam Walsh Act and the Supreme Court’s interpretation of § 3624(e) in Johnson produce an admittedly disquieting result: a person’s term of imprisonment may end without him or her being freed from confinement, thereby preventing the commencement of a term of supervised release. I agree that this result, at first glance, does not seem fair. It arguably raises serious constitutional concerns, as the majority argues, and could not have been foreseen when the Supreme Court decided Johnson. Nevertheless, it is not within our authority to rewrite the law, as interpreted by the Supreme Court, as we see fit, however laudable our policy concerns. The Supreme Court upheld Congress’s power under the Constitution to enact the Adam Walsh Act in Comstock, and has never revised its construction of § 3624(e) in Johnson. See id. at 1965; Johnson, 529 U.S. at 57, 120 S.Ct. 1114. Until the Supreme Court alters its construction of § 3624(e) so as to allow a person’s term of supervised release to begin while he or she physically remains in prison, Johnson remains binding authority. See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (“Needless to say, only this Court may overrule one of its precedents.”); United States v. Qualls, 172 F.3d 1136, 1138 (9th Cir.1999) (en banc) (recognizing the Supreme Court’s interpretation of the federal felon-in-possession statute as binding); Khan v. State Oil Co., 93 F.3d 1358, 1363 (7th Cir.1996), vacated, 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) (stating that a Supreme Court decision should be overruled, but following it, and noting that “the Supreme Court has told the lower federal courts, in increasingly emphatic, even strident, terms, not to anticipate an overruling of a decision by the Court; we are to leave the overruling to the Court itself.”).
The majority’s attempts to distinguish Johnson fail. The fact that the Supreme *1129 Court was presented with different facts in Johnson is simply irrelevant. Johnson interpreted a statute; the Supreme Court never stated or implied that its interpretation of § 3624(e) would be different under another set of facts, or that it was limited to the peculiar facts arising in that case. See Johnson, 529 U.S. at 57, 120 S.Ct. 1114(stating without qualification that “the ordinary, commonsense meaning of release is to be freed from confinement” and “[s]upervised release does not run while an individual remains in the custody of the Bureau of Prisons”). Moreover, the Supreme Court has “held that the meaning of words in a statute cannot change with the statute’s application.” United States v. Santos, 553 U.S. 507, 522, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008) (plurality opinion). “To hold otherwise ‘would render every statute a chameleon,’ and ‘would establish within our jurisprudence ... the dangerous principle that judges can give the same statutory text different meanings in different cases.’ ” Id. at 522-23, 128 S.Ct. 2020 (citation omitted). Thus, the majority’s attempt to limit the Supreme Court’s construction of § 3624(e) to “the backdrop of the facts of [Johnson ]” does precisely what the Supreme Court has admonished courts not to do: give statutory text different meanings in different cases, thus establishing a useful tool for lower courts to evade the Supreme Court’s binding interpretations of statutes. See id. We should not take this step the Supreme Court has clearly enjoined. See id.
The majority also misreads Johnson. Contrary to the majority’s interpretation, the Supreme Court was quite clear that a term of supervised release may not begin while a person physically remains in prison. See id. (defining the meaning of “release” in the context of imprisonment as requiring freedom from confinement). As the Supreme Court noted, “To say respondent was released while still imprisoned diminishes the concept the word intends to convey.” Id. Yet the majority holds that Turner was “released” for the purpose of determining the commencement of his term of supervised release even though he remained in prison. Thus, the majority adopts an interpretation of a statute that the Supreme Court has expressly rejected.
United States v. Morales-Alejo, 193 F.3d 1102 (9th Cir.1999) does not help Turner or the majority. In Morales-Alejo, we considered whether pretrial detention operated to toll a term of supervised release under the tolling provision in 18 U.S.C. § 3624(e), which provides for tolling “during any period in which the person is imprisoned in connection with a conviction ... unless the imprisonment is for a period of less than 30 consecutive days.” Id. at 1103 (emphasis added). The present case, in contrast, concerns the commencement provision, a separate provision in § 3624(e) controlling when a term of supervised release commences, not whether it is tolled. See 18 U.S.C. § 3624(e) (“The term of supervised release commences on the day the person is released from imprisonment. ...”). Of critical importance, the separate provision at issue in this case does not require that imprisonment be “in connection with a conviction.” See id. Under the plain language of § 3624(e), any imprisonment, regardless of whether it is imposed in connection with a conviction, prevents supervised release from beginning. See id. Thus, the holding in Morales-Alejo is wholly divorced from the issue in this case. See Tobey, 794 F.Supp.2d at 600-01 (explaining in further detail why Morales-Alejo does not address the issue in this case and noting that “[bjecause the Ninth Circuit’s decision concerns the tolling effect of a period of confinement, rather than the effect of confinement on the commencement of supervised release, the case is inapposite”). Even if Morales-Alejo were relevant to the commencement of a supervised release term, it predates Johnson and has been overruled to the *1130 extent it is inconsistent with Johnson.[1] See Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc). Thus, Johnson remains controlling law in this case.[2]
For good reason, an overwhelming majority of courts presented with the issue in this case have held that a term of supervised release may not begin while a person remains in prison awaiting a civil commitment hearing under the Adam Walsh Act. See, e.g., United States v. Revland, No. 02-CR-025-DEO-1, 2011 WL 6780868, at *1-2 (N.D.Iowa Dec. 27, 2011); Tobey, 794 F.Supp.2d at 601; United States v. Francis, No. 03-166-KSF, 2011 WL 1642571, at *3 (E.D.Ky. May 2, 2011); United States v. Combe, No. 1:04-CR-51 TS, 2011 WL 976892, at *2 (D.Utah Mar. 18, 2011); United States v. Bolander, No. 01-CR-2864-L, 2010 WL 5342202, at *2-3 (S.D.Cal. Dec. 21, 2010); United States v. Wilkinson, No. 1:CR-93-158, 2010 WL 598609, at *5 (M.D.Pa. Feb. 17, 2010). But see United States v. Brown, No. 3:04-cr-00119 JWS, 2011 WL 1831627, at *4 (D.Alaska May 12, 2011). The fact that file majority here adopts a position almost unanimously rejected by federal courts that have reached the issue reflects the shortcomings of the majority’s reasoning and conclusion. If the past is any guide to the future, it seems likely that most circuit courts, and perhaps our own court, sitting en banc, will also reject the majority’s position when presented with the issue in this case.
The majority also errs by ascribing any significance to my disagreement with the Government’s contention that supervised release runs during a period of civil commitment. “A stipulation of law is not binding upon an appellate court,” and “[w]e are not bound by a party’s erroneous view of the law.” Avila v. INS, 731 F.2d 616, 620 (9th Cir.1984) (citations omitted). There is “no reason why we should make ... an erroneous decision, because the applicable law was not insisted upon by one of the parties.” Id. at 621 (citation omitted). Lawyers are advocates for their clients’ interests, not arbiters of a statute’s meaning. Thus, the fact that the Government misstated the law in its answering brief is *1131 irrelevant. It should not hinder our task of giving democratically-enacted “texts their fair meaning.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 3 (2012). Moreover, as the Supreme Court unanimously held, “[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). There is simply no basis for considering the difference between a dissent and a party’s interpretation as evidence that a statute is ambiguous.
The majority’s rule of lenity analysis fares no better. It misstates both the role played by the rule of lenity in a court’s interpretation of a statute and the circumstances in which the rule of lenity may even be considered. According to the majority, “the rule of lenity cuts in Turner’s favor” because I construe § 3624(e) differently from the Government. This is an erroneous statement of law. “Lenity cannot be invoked merely because a different reading of the statute is possible.” United States v. Pearson, 321 F.3d 790, 791 (9th Cir.2003). Contrary to the majority opinion’s contentions, the rule of lenity does not apply whenever a court is not convinced that the Government’s position is unambiguously correct. The Supreme Court recently repudiated this very argument, explaining that “the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a ‘grievous ambiguity or uncertainty in the statute,’ such that the Court must simply ‘guess as to what Congress intended[.]’ ” Barber v. Thomas, — U.S. -, 130 S.Ct. 2499, 2508-09, 177 L.Ed.2d 1 (2010) (citations omitted). The rule of lenity may remain inapplicable even where a court is not “perfectly certain that[it] ha[s] divined Congress’ intentions as to [a] particular situation.” Beecham v. United States, 511 U.S. 368, 374, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994). The majority fails to overcome the fact that the Supreme Court defined the meaning of § 3624(e) in Johnson. Because the meaning of the statute is clear, and Supreme Court precedent squarely controls, there is no ambiguity and the rule of lenity does not apply here. See Nat’l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 262, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (stating that “the rule of lenity applies only when an ambiguity is present”); United States v. Gonzalez, 407 F.3d 118, 124 (2d Cir.2005) (“[T]he rule of lenity is not a catch-all maxim that resolves all disputes in the defendant’s favor — a sort of [judicial] ‘tie goes to the runner.’ ”).
The policy consequences of the majority opinion are troubling. The majority’s conclusion defeats the purpose of supervised release. The Supreme Court explained: “Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.” Johnson, 529 U.S. at 59, 120 S.Ct. 1114 (emphasis added). To find that Turner’s term of supervised release expired while he physically remained in prison removes a source of assistance he might have received in living a productive life outside of prison. This result does him no favors. It may even increase his risk of recidivism. See United States v. Hanrahan, 508 F.3d 962, 971 (10th Cir.2007) (“It is well-established that the purpose of supervised release is to provide enough supervision to prevent recidivism on the part of the offender.”); Marcus T. Boccaccini, Daniel C. Murrie, Jennifer D. Caperton & Samuel W. Hawes, Field Validity of the Static-99 and MNSOST-R Among Sex Offenders Evaluated for Civil Commitment as Sexually Violent Predators, 15 Psychol. Pub. Pol’y *1132 & L. 278, 307 (2009) (discussing “findings suggesting] that mandatory supervision may be an effective mechanism for reducing reoffending”). Thus, the majority’s conclusion may have the effect of denying supervised release services precisely when they are most needed: when an individual adjusts to life outside of prison.
Lastly, the majority overlooks the heightened importance of stare decisis in cases involving statutory interpretation. Even if Johnson was wrongly decided and it were our prerogative to overrule it, stare decisis strongly favors maintaining the Supreme Court’s interpretation of 18 U.S.C. § 3624(e) in Johnson. See Ill. Brick Co. v. Illinois, 431 U.S. 720, 736, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (“[Considerations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change this Court’s interpretation of its legislation.”); see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 899, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007) (stating that “[s]tare decisis reflects a policy judgment that in most matters it is more important that the applicable rule of law be settled than that it be settled right” and “concerns about maintaining settled law are strong when the question is one of statutory interpretation”) (citations omitted). Once the Supreme Court has construed a statute, “stability is the rule,” and the Court will not depart from it absent a compelling justification. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 280, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) (Souter, J., dissenting). Yet the majority not only lacks a good reason for departing from Johnson, it attempts, sub silentio, to usurp the Supreme Court’s prerogative to overrule its own cases.
In sum, the majority errs by treating the completion of a sentence and release from imprisonment for supervised release purposes as interchangeable. The Supreme Court could not have been more clear in rejecting this view. See Johnson, 529 U.S. at 58-59, 120 S.Ct. 1114(“All concede respondent’s term of imprisonment should have ended earlier than it did. It does not follow, however, that the term of supervised release commenced, as a matter of law, once he completed serving his lawful sentences. It is true the prison term and the release term are related, for the latter cannot begin until the former expires. Though interrelated, the terms are not interchangeable.”) (emphasis added). Therefore, I would follow Johnson and hold that Turner’s term of supervised release could not begin while he physically remained in prison.
I respectfully dissent.

. It is also worth noting that every other circuit that has reached the same issue has rejected Morales-Alejo. See, e.g., United States v. Ide, 624 F.3d 666, 668-69 (4th Cir.2010) (listing circuits that have rejected Morales-Alejo and joining the Fifth, Sixth, and Eleventh Circuits in holding "that a defendant’s term of supervised release is tolled while the defendant is held in pretrial detention on charges for which he is later convicted”).

. United States v. Sullivan, 504 F.3d 969 (9th Cir.2007) is not to the contrary. In that case, the critical question was whether a person's detention at a Montana community pre-release center tolled his term of supervised release. See 504 F.3d at 970. Sullivan is also distinguishable because in that case the detention occurred at a pre-release center with different features from imprisonment, whereas in this case the Government filed a certificate “stayfing] the release of the person” from the Bureau of Prisons’s custody, thereby prolonging his confinement in prison. See 18 U.S.C. § 4248(a); Sullivan, 504 F.3d at 972. Furthermore, in Sullivan, the court noted that pre-release centers in Montana were intended to be a rehabilitative alternative to imprisonment and that the defendant was "not subject to the control of the Bureau of Prisons.” See Sullivan, 504 F.3d at 971-72. In contrast, the purpose of prolonging a person’s confinement under § 4248(a) is “to protect the public from federal prisoners who suffer from ‘a serious mental illness, abnormality, or disorder' and who, if released, would have 'serious difficulty in refraining from sexually violent conduct or child molestation.’ ” Comstock, 130 S.Ct. at 1969 (Alito, J., concurring); see also Comstock, 130 S.Ct. at 1974 (Thomas, J., dissenting); United States v. Timms, 664 F.3d 436, 449 (4th Cir.2012). Thus, the goals of the Adam Walsh Act are much more similar to the purposes of imprisonment than to the rehabilitative goals of pre-release centers. See 18 U.S.C. § 4248(a).